THE STATE *to the use of* THE SCHOOL FUND OF GEN-TRY COUNTY V. THE WABASH, ST. LOUIS & PACIFIC RAILWAY COMPANY, *Appellant*.

1. **Pleading:** PASSENGER ROOMS AT RAILWAY CROSSINGS: STATUTE. In an action before a justice of the peace against a railroad, founded on R. S., sec. 797 as amended by the act of the General Assembly approved March 25, 1881, for the failure to erect passenger waiting rooms at railroad crossings, the statement is fatally defective which omits to aver that the intersecting railroads were both carriers of passengers.

2. **Constitution:** POLICE POWER. The requirement by the legislature of the erection of such passenger waiting rooms at railroad crossings is a proper exercise of police power of the state.

*Appeal from Gentry Circuit Court.*—HON. JOHN C. HOWELL, Judge.

REVERSED.

*H. S. Priest* for appellant.

The statement does not contain facts sufficient to constitute any cause of action. *Parish v. R. R.*, 63 Mo. 286; *Haworth v. Ormerod*, 6 Q. B. 307; *Rex v. Shaw*, 6 East 518; Potter's Dwarris Stats., p. 246; *Strong v. Stibbins*, 5 Cowen, 211; *Palmer v. Conley*, 4 Denio 375; *The Enterprise* 1 Paine 32; *Hubbard v. Johnston*, 3 Taunt. 177; *Ingersoll v. Skinner*, 1 Denio 540; *State v. Brown*,

8 Mo. 211; *Neals v. State*, 10 Mo. 498; *State v. Haden*, 15 Mo. 447; *State v. Lisles*, 58 Mo. 359. The act of the legislature of 1881 is unconstitutional, both as to the constitution of this state and of the United States. (*a.*) It is not a legitimate exercise of the power of eminent domain. Const. 1875 (Mo.) sec. 20, Art. 2; *St. Louis Co. v. Griswold*, 58 Mo. 175; Const. 1875 (Mo.) sec. 21, Art. 2; Const. 1875 (Mo.) sec. 4, Art. 12; *Leslie v. City of St. Louis*, 47 Mo. 477; Judge Field in *Munn v. Ill.*, 94 U. S. 141; *Pampelly v. Green Bay Co.*, 13 Wall. 177; *State ex rel. v. Greer*, 78 Mo. 188. (*b.*) It is not an exercise of the police power. Judge Field in *Munn v. Ill.*, *supra*; Const. 1875 (Mo.) sec. 5, Art. 12; Cooley, Const. Lim. (2d Ed.) 706; Const. 1875 (Mo.) sec. 14, Art. 12; *State ex rel. v. Greer*, 78 Mo. 188; *State v. Noyes*, 47 Me. 211; *Com'rs v. R. R.*, 63 Me. 274.

*J. W. Witten, Martin & Hardin* and *Porter & Waller* for respondent.

The same completeness requisite in a petition in the circuit court has never been required in an action before a justice of the peace. It is sufficient if the statement in such action advise the party of the nature of the claim and be sufficiently specific to be a bar to another action. *Razor v. R. R.*, 73 Mo. 471; *Key v. R. R.*, 73 Mo. 475; *Norton v. R. R.*, 48 Mo. 387; *Iba v. R. R.*, 45 Mo. 470. The act of the legislature of March 25th, 1881, is constitutional and a proper exercise of the police power. Cooley's Constitutional Limitations (3d Ed.) 575, and note 1, p. 574; *Thorpe v. Rutland & Burlington Railroad Company*, 27th Vt. 140; *Beer v. Massachusetts*, 97 U. S. Rep. 25; *Munn v. Illinois*, 94 U. S. Rep. 113; *Dartmouth College v. Woodward*, 4 Wheat. 518–629; *Sloan et al. v. Pa. Railroad Co.*, 61 Mo. 24; *Peters v. St. Louis & Iron Mountain Railroad Company*, 23 Mo. 107; *Commissioners et al. v. Holyoke Water Power Company*, 104 Mass. 446; *Hegeman v. Western Railroad*

*Company*, 16 Barb. 353.    The court will not pronounce an act of the legislature void for any supposed injustice, if it be upon a subject matter within the scope of legislative authority, when the provisions of the law are general. *Armington v. The Town of Barnet et al.*, 15 Vermont, p. 745, and reported in vol. 40, American Decisions, p. 705.

NORTON, J.—The plaintiff filed the following statement before a justice of the peace of Gentry county as her cause of action: Plaintiff states that the defendant is a railroad corporation in the state of Missouri, organized under and by virtue of the statutes of said state, and is engaged in the transportation of passengers and property.    That said railroad crosses the St. Joseph and Des Moines Railroad, a corporation under and by virtue of the statutes of said state, near Darlington, Gentry county, Mo., upon the same grade.    That the character of the land at said crossing will admit of the erection of a depot thereon.    That the defendant, either jointly with the said St. Joseph and Des Moines Railroad Company, or separately, has failed, neglected and refused to erect, build or maintain a depot, passenger house or waiting room at said crossing on the 11th day of July, 1881, as under the statutes in such cases made and provided the defendant was required.    Wherefore the plaintiff asks for judgment against the defendant for the sum of twenty-five dollars and costs.

Plaintiff had judgment before the justice, and on defendant's appeal again had judgment from which the defendant has appealed to this court.    On the trial defendant objected to the introduction of any evidence on the following grounds: 1. Because the petition, or statement, did not aver facts sufficient to constitute a cause of action.    2. Because the statute under which the action was commenced is repugnant to the constitution of the United States and the constitution of the state.

Plaintiff's cause of action is based upon the following statute: "Every railroad corporation in this state,

which now is or may hereafter be engaged in the transportation of passengers or property, shall give public notice of the regular time of starting and running its cars, and shall furnish sufficient accommodations for the transportation of all such passengers, baggage, mail and express freight as shall, within a reasonable time previous thereto, be offered for transportation at the place of starting, at the junctions of other railroads, and at the several stopping places; and shall, at all crossings and intersections of other railroads, where such other railroad and the railroad crossing the same are now or may hereafter be made upon the same grade, and the character of the land at such crossing or intersection will admit of the same, erect, build and maintain, either jointly with the railroad company whose road is crossed, or separately by each railroad company, a depot or passenger house and waiting room or rooms sufficient to comfortably accommodate all passengers awaiting the arrival and departure of trains at such junction or railroad crossing, and shall keep such depot or passenger house warmed, lighted and open to the ingress and egress of all passengers a reasonable time before the arrival and until after the departure of all trains carrying passengers on said railroad or railroads; and they are hereby required to stop all trains carrying passengers at the junction or intersection of other railroads a sufficient length of time to allow the transfer of passengers, personal baggage, mail and express freight from the trains of railroads so connecting or intersecting, or they may mutually arrange for the transportation of such persons and property over both roads without change of cars; and they shall be compelled to receive all passengers and freight from such connecting or intersecting roads whenever the same shall be delivered to them. Every railroad corporation or company which shall fail, neglect or refuse to comply with the conditions of this section from and after the first day of July, 1881, shall, for each day said corporation or railroad company refuses, neglects or fails to comply therewith after said

day forfeit and pay the sum of twenty-five dollars, which may be recovered in the name of the state of Missouri to the use of the school fund of the county wherein said crossing is situated; and it shall be the duty of the prosecuting attorney to prosecute for and recover the same." R. S. § 797, as amended by Laws, 1881, p. 77.

It will be observed that this is a penal statute. It enjoins upon railroad companies the duty of doing certain things which, if not done, subjects them to the payment of a fixed penalty, and, being penal, it should be strictly construed, and so as not to enlarge the liability it imposes nor allow a recovery under it, unless the party seeking it brings his case strictly within the terms or conditions authorizing it. *Parish v. Railroad*, 63 Mo. 284. Giving force and effect to this rule we must hold that the first objection to the sufficiency of the statement is well taken. The evident purpose of the statute, in requiring railroad companies carrying passengers to build depots or station houses * * * at all places where they cross each other, was to afford facilities not so much to those living in the immediate vicinity of such crossing, as to the travelling public at large, and to that class of persons travelling on one railroad destined for some point on the railroad which it crosses. If this was the purpose of the law before the obligation to build a depot at the crossing of two railroads could arise, it must appear that each of said roads was engaged in carrying passengers, and for the reason that it does not so appear in the statement, it fails to set forth a cause of action. It is averred that defendant company was engaged in carrying passengers, but does not aver that the St. Joseph and Des Moines Railroad was so engaged. All that is averred in the statement may be taken as true, but for lack of the above averment, no recovery could be had. The objection to the admission of any evidence under it ought therefore to have been sustained, and error was committed in overruling it.

It is further insisted that the requirement of the

statute that defendant should appropriate its money in constructing a depot or passenger house at all places where it crosses another railroad is an appropriation of private property to a public use without just compensation, and is therefore in violation both of the state and federal constitutions. Counsel have made an ingenious argument in support of this position, the fallacy of which consists in the assumption that the statute in question was but an exercise on the part of the legislature of the right of eminent domain. It may be conceded that the state, in the exercise of the right of eminent domain, cannot take private property for private purposes at all, and it can only take private property for public use upon the payment of a just compensation to the owner whose property is taken. Such statutes as the one in question have never been upheld on the ground that the right of eminent domain conferred the power to pass them, but their validity has been bottomed on the principle that, when private property is devoted by the owner to a public use, some right of such use is reserved or inheres in the legislature to regulate the use. It is upon these principles that such laws as licensing and regulating ferries, requiring railroad companies to build fences on each side of their tracks, to erect and maintain cattle guards, gates and farm crossings have been upheld. In the case of *Munn v. Illinois*, 94 U. S. 113, when this subject came before the court, it is said: "Property becomes clothed with a public interest when used in a manner to make it of public consequence and affect the community at large; when, therefore, one devotes his property to an use in which the public has an interest he in effect grants to the public an interest in that use, and must submit to be controlled by the public for the common good to the extent of the interest he has thus created. He may withdraw his grant by discontinuing the use, but so long as he maintains the use he must submit to the control."

An illustration of the principle is to be found in

Lord Hale's treatise "De Jure Maris," 1 Harg. Law Tracts, 6, where it is said "a person may make a ferry for his own use or the use of his family, but not for the common use of all the king's subjects passing that way, because it doth in consequence tend to a common charge, and is become a thing of public interest and use, and every man for his passage pays a toll which is a common charge, and every ferry ought to be under a public regulation, viz: that it give attendance at due times, keep a boat in due order, and take but reasonable toll, for if he fail in these he is finable." So Lord Ellenborough in the case of *Allnut v. Inglis*, 12 East 527 observed: "There is no doubt that the general principle is favored, both in law and justice, that every man may fix what price he pleases on his own property, or the use of it, but if for a particular purpose the public have a right to resort to his premises, make use of them, and he have a monopoly in them for that purpose, if he will take the benefit of the monopoly, he must as an equivalent, perform the duty attached to it on reasonable terms." So in the case of *Thorpe v. R. and B. R. Co.*, 27 Vt. 140, when the court was called to pass upon the validity of a law requiring railways to erect and maintain cattle guards at farm crossings, Redfield, C. J., in an exhaustive and elaborate opinion, in which the authorities bearing on the question are reviewed, held that the power of the legislature to control railways in that respect may be found in the general control of the police of the country, which resides in the law making power in all free states.

While the defendant company is a private corporation and the franchise and property acquired by it private property, the use to which it is applied is nevertheless a public use. The general assembly has delegated to railway companies the power to exercise the right of eminent domain, and to take private property upon which to construct their roads upon the sole ground that the property so taken is to be devoted to a public use, and that they were created and brought into being for

public purposes; and it is upon this ground that the seizure of property for their use, and the validity of county and municipal subscriptions to such enterprises have been maintained by the courts. Such being the designs of their creation, the public having an interest in the use have the right, through the legislature, to subject them to such reasonable regulations as will effectuate and promote the object of their creation. The requirement to build suitable depots or passenger houses at the crossing of railroads for the accommodation of the public desiring to avail themselves of the use to which the property of the corporation is devoted, and in which the public has an interest is not, in our opinion, an unreasonable regulation, and may be classed as coming within a proper exercise of the police power of the state, and directly in aid of the very object for which such corporations were created. Such a regulation neither disturbs any chartered rights nor impairs the obligation of any contract relation existing between the state and the corporation, but on the contrary was designed to facilitate public travel on the roads respectively crossing each other.

Judgment reversed and cause remanded for insufficiency of statement, in which all concur, Judges Hough and Henry and Sherwood concurring in the result.

HENRY, J., CONCURRING: I concur in the reversal of the judgment, but express no opinion at present on the question of the constitutionality of the act of the legislature requiring railway companies to erect and maintain depots where their roads cross and are crossed by other railroads. I have not yet had an opportunity to give the subject the consideration which its importance demands. I have not been able to find an adjudication on the precise question, either in the United States or in England. No such case is cited in the opinion delivered by Judge Norton for the court.