STATE *ex rel.* BARTON CO. *v.* KANSAS CITY, FT. S. & G. R. CO.

*(Circuit Court, W. D. Missouri, W. D.   October, 1887.)*

1. CONSTITUTIONAL LAW—POLICE POWER—REGULATION OF RAILROAD CROSSINGS.
   In 1881 the legislature of the state of Missouri passed an act affecting rail-roads, which provided that, at railroad crossings, the railroads crossing there should erect and maintain suitable depots and waiting-rooms to accommo-date passengers.   *Held,* that it was a legitimate exercise of the police power and not unconstitutional.

2. RAILROAD COMPANIES—REGULATION OF CROSSINGS—ACTION FOR VIOLATION—PARTIES.
   An act of the legislature of Missouri made it the duty of railroads to erect and maintain at railroad crossings waiting-rooms for passengers, and fixed the penalty for a violation of the act.   The defendant was prosecuted for not complying with the provisions of the act.   It insisted that there was a de-fect of parties, in that both railroad companies were not joined.   *Held,* that neither was released from liability by the failure of the other.

3. STATUTES—REPEAL—EFFECT ON PENALTIES INCURRED.
   In 1885 the legislature of Missouri amended an act passed in 1881.   The de-fendant company claimed that the amendment worked a repeal of the law of 1881, and released it from penalties incurred before the amendment.   Rev. St. Mo. § 3151, provides:   "No offense committed, and no fine, penalty, or forfeit-ure incurred, previous to the time when any statutory provision shall be re-pealed, shall be affected by such repeal; but the trial and punishment of all such offenses, and the recovery of such fines, penalty, and forfeiture shall be had, in all respects, as if the provisions had remained in force."   *Held,* that though the penalty was incurred prior to the amendment of 1885, still under this section it was recoverable.

4. SAME—CONSTRUCTION—MANDATORY PROVISIONS—CONDITIONS.
   A statute contained simply mandatory provisions, and it imposed a penalty for a failure to comply with the conditions of the section.   *Held,* that what-ever criticism might be placed on the use of the word "conditions," the intent was plain, and the statute was to be construed so as not to defeat the mani-fest intent of the law-making power.

5. QUI TAM AND PENAL ACTIONS—LIMITATION OF—FAILURE TO MAINTAIN RAIL-ROAD FACILITIES.
   Rev St. Mo. § 3231, places a limit of three years upon an action upon a stat-ute for a penalty or forfeiture where the action is given to the party ag-grieved, or to such party and the state.   *Held,* that this did not apply to a case where a railroad had incurred penalties for not erecting a passenger de-pot at a crossing, and the penalties went to the school fund.

6. SAME—JOINDER OF OFFENSES—VIOLATION.
   A statute imposed penalties for a failure to comply with the conditions of the section.   *Held,* that a disobedience of any one of the provisions subjected the delinquent to the penalty.

7. SAME—VIOLATION—CONTINUED OFFENSE.
   An act provided that for each day from and after a certain specified day the delinquent should forfeit and pay the sum of $25.   *Held,* that the legisla-ture intended an accumulation of penalties, and the defendant could not atone for its delinquencies by the payment of a single penalty.

*Botsford & Williams,* for plaintiff.
*Pratt, McCrary & Ferry* and *C. W. Blair,* for defendant.

BREWER, J.   In 1881 the legislature of the state of Missouri passed an act affecting railroads, which, so far as is material to this case, reads:
"Every railroad corporation in this state which now is, or may hereafter be, engaged in the transportation of passengers or property   *   *   *   shall,

at all crossings and intersections of other railroads, where such other railroad and the railroad crossing the same are now, or hereafter may be, made upon the same grade, and the character of the land at such crossing or intersection will admit of the same, erect, build, and maintain, either jointly with the railroad company whose road is crossed, or separately by each railroad company, a depot or passenger house, and waiting room or rooms sufficient to comfortably accommodate all passengers waiting the arrival and departure of trains at such junction or railroad crossing, and shall keep such depot or passenger house warmed, lighted, and open to the ingress and egress of all passengers a reasonable time before the arrival and until after the departure of all trains carrying passengers of said railroad or railroads.  *  *  * Every railroad corporation or company who shall fail, neglect, or refuse to comply with the conditions of this section from and after the first day of July, 1881, shall, for each day said corporation or railroad company refuses, neglects, or fails to comply therewith, after said day, forfeit and pay the sum of twenty-five dollars, which may be recovered in the name of the state of Missouri to the use of the school fund of the county wherein said crossing is situated; and it shall be the duty of the prosecuting attorney to prosecute for and recover the same." Laws 1881, p. 77.

In Barton county the defendant's road crosses the Missouri Pacific Railroad, and, it having failed at such crossing to build the depot as required by this section, this action was commenced in February, 1885, by the prosecuting attorney of that county, to recover the penalties therefor. The amended petition is in 1,338 counts, each count seeking to recover the penalty for one day's failure to build a depot, commencing with July 2, 1881, and ending at the commencement of the suit. A demurrer has been filed to each and every count of this petition, and various questions have been argued with great ability and learning by counsel.

The first question is as to the constitutionality of the act. Statutes of this nature, when sustainable, are sustainable under the police power of the state, and in discussing questions of this nature we are confronted at the outset with the fact that no one knows the limits of the police power. Many attempts have been made to define it, and prescribe its boundaries, but none as yet have been so successful as to meet general approval. Even so learned a tribunal as the supreme court of the United States declined to attempt a definition, and held that the limits of the power could be more safely determined by the process of inclusion and exclusion, as the various cases involving its assertion should arise. It is a power affecting the public health, the public safety, and the public welfare. By reason of its undetermined extent it is the *bete noire* of courts. *Omne ignotum pro magnifico.* Hence in many cases the assertion of its extent is yielded to without question. But the power has limits; some are recognized and established, others, doubtless, will be from time to time. One is that the police power of the states is limited by the express prohibitions in the federal constitution upon a state's action. For instance, the state may regulate fares and freights, but inasmuch as the regulation of interstate commerce is vested in the general government, the state's police power to regulate freights and tariffs does not extend to interstate commerce. *Railway Co.* v. *Illinois,* 118 U. S.

557, 7 Sup. Ct. Rep. 4. Again, while the states may, in the exercise of their police power, prohibit the manufacture and sale of intoxicating liquors, they cannot, in view of the fourteenth amendment, extend such power to the destruction of private property invested before the passage of any prohibitory enactment in breweries or distilleries. *State* v. *Walruff*, 26 Fed. Rep. 178. So, I think, though without attempting to formulate a rule therein, a distinction will be drawn between cases in which the police power is invoked simply to regulate the use of property, and those in which a demand is made for the expenditure of money. It is one thing to require a railroad company to stop its trains at a given point; it is another to require it to go to the expense of building a depot at that point. One means nothing but the manner of use, the other calls for an outlay of money. Much larger liberty will be accorded to the legislature in the one direction than in the other. * I do not mean to assert that the police power does not extend to any cases of the latter nature; I simply affirm that the courts will put narrower boundaries upon an attempted exercise in this direction. My first thought on the examination of this statute was that this distinction was operative here, and would compel an adjudication against the validity of the statute. I still have doubts of its validity, but as the rule is that questions of doubt must be resolved in favor of the constitutionality of a statute, I am constrained to hold that this act is a valid exercise of the police power of the state. That it is so valid has been affirmed by one of the judges of the supreme court of this state in the case of *State* v. *Railway Co.*, 83 Mo. 144. It is true that no decision was made by the court on this question, the case going off on another matter, but the opinion of so distinguished a jurist as Judge NORTON is entitled to great weight. If the supreme court of the state had affirmed its validity, doubtless such decision would be conclusive on the federal courts, unless in their judgment some provision of the federal constitution was infringed upon by the statute.

It is no longer doubted that the legislature may require that trains shall stop at every railroad crossing. Public safety justifies, if it does not compel, this. If the legislature may require a stop, why may it not require a stop of sufficient length to permit passengers to get on and off, and with that require suitable depot privileges? It will be noticed that the statute does not attempt to prescribe the size or expense of these depots; it leaves that to the discretion of the railroad companies, simply requiring that they shall be sufficient to comfortably accommodate passengers at that point. It would seem to be a reasonable exercise of the police power to compel railroad companies to furnish suitable accommodations for passengers at all places where they receive and discharge them from their trains. Public welfare, if not public safety, justifies this. It was suggested on the argument that in some instances the tracks of two railroads cross and recross several times within the limits of a city in making their way to a union depot; and it was asked, why should a depot be required at each of those crossings? It may be that, under the statute, none is there required; for it has been often said that that

which is not within the spirit, though within the letter, of the statute, is not within the statute, and it may well be that, construing this statute according to its spirit, it does not apply to cases of that kind. It may also be true that other circumstances may exist which in any given case will prevent the operation of the statute. This very case may, when the facts are fully disclosed, show a condition of affairs which will justify the court in holding the statute inapplicable. But considering the statute by itself, I am constrained to hold it a legitimate exercise of the police power, and not unconstitutional.

Another question is this: In 1885 the legislature amended this statute, and it is contended that such amendment worked a repeal of the act, and released the defendant from all liability incurred before such amendment. This might be true, and doubtless would be, but for section 3151 of the Revised Statutes of Missouri, vol. 1, p. 528. That section reads:

"No offense committed, and no fine, penalty, or forfeiture incurred, previous to the time when any statutory provision shall be repealed, shall be affected by such repeal; but the trial and punishment of all such offenses, and the recovery of such fines, penalties, and forfeiture shall be had, in all respects, as if the provisions had remained in force."

I had occasion, when on the supreme bench of Kansas, to consider a section of this nature, and shall not restate the reasons which controlled the decision of that court. It is enough to say that this section must be taken as establishing a general rule controlling all cases in which the repealing act does not clearly express a contrary intent. The amendment in this case certainly suggests nothing of an intention to dispense with the operation of this general rule, and though the penalty was incurred prior to the amendment of 1885, still under this section it is recoverable.

Again: It is insisted that there is a defect of parties defendant, in that both railroad companies are not joined. This is a mistake; the penalty is incurred by each; the obligation rests upon each; they must build a depot jointly, or, on the failure of either, the other must act separately. Neither is released from liability by the failure of the other.

Again: It is insisted that the statute of limitation bars many of these counts, and section 3231, Rev. St. Mo. p. 547, is referred to, which places a limit of three years upon "an action upon a statute for a penalty or forfeiture where the action is given to the party aggrieved, or to such party and the state." I do not think the section applicable; that applies where somebody is wronged by the action of the defendant, and to him alone, or to him in conjunction with the state, an action for a penalty is given. An illustration of that is where a party is overcharged for freight or transportation by a railroad company. He is personally injured,—in the language of the statute, the party aggrieved; but in this case the penalty goes to the school fund, and the schools of the state are in no manner injured by this failure of the defendant to comply with the statute; the school fund can in no proper sense be considered a party aggrieved. Looking at the statutes of limitation applicable solely to civil cases, there is to be found no provision placing other than a 10-year limitation upon

cases of this kind.   Turning to the criminal procedure of the state, article 11, Rev. St. p. 291, prescribes certain limitations.   Section 1709 reads:

"If the penalty is given, the whole or in part, to the state, or to any county or city, or to the treasury thereof, a suit therefor may be commenced by or in behalf of the state, county, or city, at any time within two years after the commission of the offense, and not after."

Now, this action is what is known as a *qui tam* action; it is civil in form, but is to recover a penalty imposed by a penal statute, and is therefore, partially at least, criminal in its nature.   Counsel did not discuss the applicability of this criminal statute of limitation, and therefore I express no opinion on the question; I simply suggest it for consideration, leaving a decision to the after-proceedings in this case.

Again:   It is insisted that the statute imposes the penalty for a failure to comply with the conditions of the section; that, in fact, there are no conditions, but simply mandatory provisions; that this, being a penal statute, is to be construed strictly, and hence, there being no conditions, no penalty is recoverable.   Whatever criticism may be placed upon the use of the word "conditions," the intent of the legislature is plain; and, although this be a penal statute, it is not to be so construed as to defeat the manifest intent of the law-making power.   *In re Coy*, 31 Fed. Rep. 794.   Giving full force to the intent of the legislature, it is obvious that it meant to enact that a failure to comply with these mandatory provisions cast upon the delinquent the prescribed penalty.

Again:   It is insisted that all the provisions of the section must be disregarded before the penalty is cast.   The statute says a refusal to comply with the conditions subjects to the penalty.   That this means all of the conditions, is claimed, not only from the language used, but also from the fact that in 1885 the legislature amended this section so as to impose the penalty for a failure to perform any of the provisions.   This is urged as a legislative interpretation of the meaning of the act of 1881. It may be that, or it may be the effort of the legislature to make plain what was doubtful before.   I think it the latter, for the meaning of the act of 1881, while not certain, yet tested by the apparent intent, was the imposition of a penalty for delinquency in respect to any one of these provisions.   A penal bond is broken by a failure to comply with any of the conditions of the bond, and in an action thereon it is unnecessary to charge a breach of all.   This is similar; it is a penal statute with mandatory provisions, and obviously the legislature meant, and its language fairly construed implies, that a disobedience of any one of these provisions subjects the delinquent to the penalty.

Finally:   It is insisted that but one penalty can be recovered for all delinquencies prior to the commencement of this action.   The cases of *Fisher* v. *Railway Co.*, 46 N. Y. 644; *Parks* v. *Railroad Co.*, 13 Lea, 1; *Murray* v. *Railroad Co.*, 63 Tex. 407; *Gulledge* v. *Railroad Co.*, (not reported,) (Tex. Ct. App.,) are cited in support thereof.   This question is also one that has embarrassed me no little.   It seems shocking that a book account of penalties can be run up against a delinquent.   In this case

the penalties sued for amount to over $30,000, and it is hard to believe that the legislature intended that such a burden of penalties should be cast upon a delinquent before its conduct is challenged and condemned in the courts. The authorities cited show that one penalty is alone recoverable, unless the language of the statute clearly expresses a contrary intent. I regret to say, and I do it with great hesitation, that such seems to be the intent of this section. It does not impose a penalty simply for a failure to construct a depot, but it says that for each day, from and after a specified day, the delinquent shall forfeit and pay the sum of $25. Now, that language fails of meaning if after a lapse of years of delinquency but one penalty was recoverable. The delinquent would not be forfeiting and paying $25 for each day of delinquency. Giving to this language that force which each word requires, it must be held that the legislature intended an accumulation of penalties, and the delinquent cannot atone for its delinquencies by the payment of a single penalty. In conclusion let me say that, while upon these several questions I have been driven, and upon some of them reluctantly and hesitatingly, to conclusions adverse to the defendant, I cannot forbear expressing a feeling that this action ought not to be maintained for the enormous sum claimed, and that a moral wrong will be done if in the final determination of this action it shall be adjudged that the defendant is under the law liable for the payment thereof. For the present, however, and upon the questions presented, the order must be that the demurrer is overruled.