JACOB F. JACOBSON v. WISCONSIN, MINNESOTA & PACIFC RAILROAD COMPANY and Another.[1].

April 15, 1898.

Nos. 10,925—(255).

Railway — Junction Switch — Concurrent Jurisdiction of State and Federal Authorities to Compel Construction—Benefit to State Traffic—Evidence—Appeal from Order of R. R. Commission—Burden of Proof.

Where the putting in of a connecting switch at the crossing of two railroads to facilitate the transfer of cars from one road to the other will

[1] Reported in 74 N. W. 893.

benefit both state and interstate traffic, *held*, there is concurrent jurisdiction in the state and federal authorities to order the putting in of such connection. *Held*, it sufficiently appears that there is in this case such necessity for the connection in question, arising from the benefit which will accrue to state traffic alone, that the state railroad and warehouse commission were warranted in ordering the connection to be made. But *held*, further, on the appeal from the order of the commission, the burden was on the appellant railroad companies to show a want of such necessity, and they failed to maintain that burden.

Same—Laws 1887, c. 10; Laws 1895, c. 91—Constitution—Authority of R. R. Commission—Interchange of Traffic.

*Held*, chapter 10, Laws 1887, as amended by chapter 91, Laws 1895, does not, at least as applied to the present case, contravene either the federal constitution or the constitution of this state in conferring upon the commission power to require the making of such a connection, the transfer and interchange of loaded cars, and the making of joint rates for through shipments when part of the haul is on one and part on the other of the two connecting railroads.

On an appeal by defendant railway companies from an order of the state railroad and warehouse commission judgment was entered in the district court for Yellow Medicine county, pursuant to the findings and order of Powers, J., requiring said railway companies to make switch connection at a crossing of their roads. From this judgment the defendants appealed. The facts are stated in the opinion. Affirmed.

*Albert E. Clarke* and *Wilbur F. Booth*, for appellant, Wisconsin, Minnesota & Pacific Railroad Company.

The act of the state legislature by virtue of which the complainant seeks to enforce the construction of the connecting track and the interchange of traffic between the defendant railway companies is in violation of section 2 of article 1 of the constitution of the State of Minnesota, in that it deprives this defendant of its business and property and the right to contract in relation thereto; and it violates section 13 of article 1 of the constitution of said state, in that it assumes to take private property for public use without just compensation. It also violates the 14th amendment to the constitution of the United States, in that it abridges the privileges and immunities of this defendant as a citizen, de-

nies it equal protection of the laws, and deprives it of its property and the use thereof without just compensation or due process of law.

The railroad company is entitled to protection in its property rights. Having acquired its right of way, constructed its road, equipped it with cars and engines, and put itself in readiness to do business, it has the same right to acquire and retain such business as it is fitted to transact as has a merchant or a farmer. When it has built an expensive road for the purpose of transporting the products of the country adjacent to its line, the legislature has no power to compel it to deliver the business thus acquired to a competitor for transportation to a different destination. The right to make its own contracts in reference to its business is denied this defendant. It is compelled to enter into contract relations with every company having a line intersecting its road. A railway company cannot be compelled to haul the cars of another company over its line when it has cars of its own which it desires to use for that purpose. Oregon v. Northern, 51 Fed. 465. The court cannot require a railway company to enter into an agreement with another railway company engaged in like traffic for a joint through routing and joint through rates, nor can the court, upon a refusal to comply with such requirement, make such a contract for the parties. Chicago v. Osborne, 52 Fed. 912; Little Rock v. St. Louis, 59 Fed. 400.

The act in question is devoid of merit, unless each of the railway companies whose lines are to be connected under compulsion can be compelled to contract for a joint rate, and can also be compelled to route its cars over that of another company. Section F of the act expressly excludes a construction of the act which would require either defendant in this case to send its cars over the lines of the other. The power of the court under this act is limited therefore, as to these defendants, to a mechanical connection, and under the act as applicable to this case, this defendant is not bound to carry beyond its own line except by its own contract; and if it does so it has the right to select its own agencies. Atchison v. Denver, 110 U. S. 667; Kentucky v. Louisville, 37 Fed. 567.

It is beyond question that at common law two carriers cannot be compelled to enter into contracts with each other for the hauling of cars or making of joint tariffs. The only question is whether the legislature has the power to compel that which may not be done by the courts under the common law. It is denied that such power can be delegated to the railroad and warehouse commission. It goes beyond the establishment of a uniform maximum rate for railroad transportation and is the establishment of contract relations between two companies, and the rates and terms under which two particular citizens must do business, not only with the public, but with each other. County v. Southern, 18 Fed. 385, 406.

The act violates section 8 of article 1 of the constitution of the United States in that it is a regulation of commerce between the several states, and seeks to compel the defendants to make joint rates for the transportation of interstate traffic, for the connection is useless to complainant without the joint rate to points in Iowa and Nebraska.

The act also violates section 10, article 1 of the constitution of the United States, and section 11, article 1 of the state constitution in that it violates the charter contract with the defendants. The legal duty of the defendant is commensurate only with its franchise; its franchise is only confined to the transaction of business on its own line of road and cannot be made to extend beyond it. People v. Chicago, 55 Ill. 95. Nor can the state violate this defendant's charter contract, by which it is entitled to compensation for services rendered, by compelling it to transfer and handle the contents of cars without pay. Cleveland v. City, 71 Fed. 610.

A railroad corporation is *authorized* to exercise the right of eminent domain in the acquisition of land necessary for the construction and operation of its railroad; but the cases in which it can be *compelled* to exercise the right are few if any. In this case the petitioner is a private individual, who cannot exercise *directly* the right of eminent domain, but in this proceeding he insists that he can do so *indirectly*; that he can compel this defendant, which has no use for this land and does not want it, to exercise the right of eminent domain for his personal benefit. The defendant is to

be compelled to exercise this right, not for his own benefit, but to his own injury; not for the benefit of the public, but for the benefit of individuals.

The right of a citizen to contract relative to his own business is both a property right and a right of personal liberty, and cannot be taken away. Frorer v. People, 141 Ill. 171; Braceville v. People, 147 Ill. 66; Harding v. People, 160 Ill. 459.

This defendant is organized under special charter, and not under the general laws of the state, and there has never been any attempt on the part of the legislature so to amend the charters of the defendants as to enable the legislature to compel them to extend their tracks or build additional tracks. If the power to amend has been reserved it has not been exercised. All that was decided in Peoria v. Chicago, 109 Ill. 135, and other cases, is that where the legislature has reserved the right to amend the charter, and has amended the charter, the amendment is valid. Furthermore this is not a case of police regulation, but is one in which the confiscation of property is demanded. State v. Kansas, 32 Fed. 722.

The only issue of fact in this case is whether the connection required is necessary for the accommodation of the public requirements. A public necessity which would justify the enforced exercise of the right of eminent domain must be one in which the general public has an interest, and not one in which a few individuals have a purely private and personal interest. In this case the connection is not demanded by any public interest; the "public interest," as represented by the petitioner, consists of the private interest of a few people living in three or four villages, all located upon a piece of road 25 miles long.

*H. W. Childs* and *Geo. B. Edgerton,* for respondent.

The evidence as to the necessity of the connection is sufficient to sustain the order of the commission. The statute provides that the findings of the commission are prima facie just and reasonable, and it devolved upon the carriers to overcome the presumptive force of the order as to all the questions of fact involved therein. The evidence adduced by appellant not only fails to overcome the presumption, but sufficiently discloses both the practicability and

commercial necessity of the facilities asked for in the complaint, for the question is of concern not only to the consumers of wood in Yellow Medicine county, but to the owners of timber land in Todd and other counties who want markets for their cordwood, and other forms of timber. The statute, in speaking of the necessity of traffic, does not mean that it must be shown that every business in which men are engaged and which is served by railroad must be consulted and shown to require it.

The act in question is not unconstitutional. A company organized under the general laws, as is the case with the two defendant companies, is subject to such needful police regulations as the legislature may prescribe, and it matters not whether the duty was prescribed by the general law at the time the company was organized or by a subsequent enactment. Stone v. Farmers, 116 U. S. 334; Georgia v. Smith, 128 U. S. 179; Chicago v. Minnesota, 134 U. S. 418, 455; State v. Gladson, 57 Minn. 385; Gladson v. Minnesota, 166 U. S. 427.

There can be no question as to the authority of the legislature to prescribe, as a pre-requisite to the right of organizing a railroad corporation in this state, that all such companies shall provide suitable transfer facilities for the interchange of cars and traffic at points of intersection of the respective lines, to receive and transport such cars and traffic as shall be tendered at such points of intersection, and to adopt and maintain reasonable rates therefor; and it is equally clearly within the authority of the legislature to provide such regulations in subsequent amendatory or independent provisions of the statute.

The act of 1895 requires transfer facilities only when they are found to be "practicable and necessary for the interest of traffic." It is only upon the theory that a railway company is necessary for the "interest of traffic," in other words, that it is conducive to the general welfare as an agency of travel and commerce, that it is chartered and given the power of eminent domain. The right of control or regulation of a common carrier by public authority flows from the fact that from the very nature of such business, it is affected with a public interest. Munn v. Illinois, 94 U. S. 113, 126; Com. v. Alger, 7 Cush. 53, 84.

A railroad is a quasi public highway, that is, it is private property affected with a public interest, and the principle so clearly expressed in the earlier cases, that a railroad is subservient to the public utility and subject to legislative control, still obtains in full force and vigor. The true doctrine is that the legislature, when it has not tied its hands by a contract clearly expressed in the charter of the railroad company, may exact of that company that it permit the use of its tracks by another company upon just terms and compensation. Atchison v. Denver, 110 U. S. 667; Express Cases, 117 U. S. 1; Central v. Wabash, 29 Fed. 546; Mayor v. Norwich, 109 Mass. 103, 112; Michigan v. Smithson, 45 Mich. 212; Smith v. Chicago, 86 Iowa, 202; Burlington v. Dey, 82 Iowa, 312; Peoria v. Chicago, 109 Ill. 135; State v. Wabash, 83 Mo. 144; State v. Kansas, 32 Fed. 722; Worcester v. Pennsylvania, 3 Interst. Com. Com. 577, 581. The provisions contained in the act of 1895 might have been imposed by the general law as a condition to the right of the railway companies to organize for the business of common carriers. Furthermore, although such provision was not in the statute under which the companies were incorporated, there was an implied reservation of power by the state to impose the duty subsequently. Pierce, R. 457; Chicago v. Minnesota, 134 U. S. 418, 455. The scope of the franchise acquired under the general law is dependent upon and governed by the terms of that law, and the legislature may impose a duty to be observed as a right to the exercise of the franchise.

The statute has clothed the corporation with the power of eminent domain only in furtherance of the public good. Such delegation of power can be justified only because the business of the corporation is in its nature public. It is because a railroad is a public necessity. San Francisco v. Caldwell, 31 Cal. 367; Secombe v. Railroad, 23 Wall. 108; Mayor v. Norwich, 109 Mass. 112. The contention of the railroad companies that they cannot be compelled to use the power so conferred in a matter authorized and required by the state in aid of public traffic should prevail only in case of the clearest want of legislative authority. Furthermore this objection should be considered only in those cases where it is made clearly to appear that it would be unjust to the com-

panies to exact the acquisition of additional land. This is a question that should be submitted to the consideration of the commission as an element in determining the practicability of track connections and transfer facilities at a given crossing. It has nothing to do with the validity of the law.

CANTY, J.

The Willmar & Sioux Falls Railroad extends from Willmar, in this state, in a southwesterly direction, to Sioux Falls, in South Dakota, and is crossed nearly at right angles by the Wisconsin, Minnesota & Pacific Railroad, near Hanley Falls, in this state. The former railroad is a part of the Great Northern system of railroads, and the latter is operated in connection with the Minneapolis & St. Louis Railway, and as a part of the same. The crossing near Hanley Falls is a grade crossing, and there has never been any switch connecting the two railroads at that point.

Chapter 10, Laws 1887, as amended by chapter 91, Laws 1895, provides:

"Sec. 3. (A) That all common carriers subject to the provisions of this act shall provide at all points of connection, crossing or intersection at grade where it is practicable and necessary for the interest of traffic, ample facilities by track connections for transferring any cars used in the regular business of their respective lines of road from their lines or tracks to those of any other common carrier whose lines or track may connect with, cross or intersect their own, and shall provide equal and reasonable facilities for the interchange of cars and traffic between their respective lines, and for the receiving, forwarding and delivering of passengers, property and cars to and from their several lines and those of other common carriers connecting therewith."

The act further provides that, on the application of any person interested, the state railroad and warehouse commission shall order connections to be made at such crossings, and this is conceded by appellants. The commission did so order in this case after notice, and a hearing had in the manner provided by the statute. Both railroad companies appealed to the district court from the order. On a hearing had in the district court, the order was affirmed, and the connection ordered to be made by a curved switch, 778.6 feet long, and particularly described, just as the commission had or-

dered. From the judgment of the district court entered thereon, both railroad companies appeal to this court. The Wisconsin, Minnesota & Pacific Railroad Company has appeared and filed a brief, but the other appellant has not argued the case or filed any brief.

The connecting switch will, at the middle of the same, extend outside of the right of way of each and either railroad, and it will be necessary to condemn at that place a narrow strip of land, a few hundred feet long, for the use of the switch. One of the lines of the Great Northern System extends from Duluth southwest to Willmar. Another extends from St. Paul and Minneapolis west to Willmar. These two lines pass through large areas of wood land, the timber on which is available for fuel and fence posts. Southwest of Willmar, and for many miles in all directions around Hanley Falls, the country is mostly prairie. Timber is scarce, and great quantities of cordwood and fence posts are brought down on the Willmar & Sioux Falls Railroad from said timbered regions and distributed along that road. Timber is not as plentiful along the Minneapolis & St. Louis System. For that reason cordwood and fence posts are much dearer at the stations on the Wisconsin, Minnesota & Pacific Railroad, east and west of Hanley Falls, than such wood is at that station and the stations north and south of it on the Willmar & Sioux Falls Railroad. For this reason it is for the benefit of the people in the territory tributary to the Wisconsin, Minnesota & Pacific Railroad, but not tributary to Hanley Falls, that this connection should be made, so as to enable them to have cars of wood transferred at that point from the Willmar & Sioux Falls Railroad to the Wisconsin, Minnesota & Pacific Railroad, and distributed at the stations along the latter road. But this will deprive the Wisconsin, Minnesota & Pacific Railroad Company of the benefit of a much longer haul on dearer wood. The loss of revenue which will result to it by reason thereof is one of the grounds of its complaint here.

A large number of cattle are raised in the territory tributary to the Wisconsin, Minnesota & Pacific Railroad west of Hanley Falls. For such of these cattle as are fat enough for beef, Minneapolis and St. Paul are the best market, but, for the stockers and feeders,

Sioux City or Omaha is the best market. But there is no way of reaching Sioux City or Omaha with cars of stock shipped from said territory over said last-named road, except by running the cars first to Hopkins, within eight miles of Minneapolis, and then transferring them to another railroad with which the Minneapolis & St. Louis Railway Company has traffic arrangements, and running the cars over such other road to Sioux City or Omaha. The distance from Hanley Falls to Sioux City by this route is 380 miles, while the distance from Hanley Falls to Sioux City over the Willmar & Sioux Falls Railroad is but 181 miles. Making the connection in question will deprive the Wisconsin, Minnesota & Pacific Railroad Company of the benefit of such longer haul on such stockers and feeders, and the loss of revenue which will result to it by reason thereof is another ground of its complaint.

1. Appellant Wisconsin, Minnesota & Pacific Railroad Company contends that, as the shipping of stock to Sioux City and Omaha is interstate commerce, the state tribunals have no jurisdiction over it, and must not take into consideration the question of the transferring of cars of such stock when determining the necessity of a connection at this crossing.

Conceding, without deciding, that the state tribunals would have no jurisdiction to require the making of this connection for the sole purpose of transferring cars engaged solely in the carrying of interstate commerce, it does not follow that these tribunals may not take into consideration the benefit to such commerce also, when determining the necessity of this connection. The whole traffic to be benefited by the making of the connection may be amply sufficient to justify requiring the same to be made; yet the part of such traffic commencing and ending in the state may not be sufficient when taken alone, and the part which consists of interstate commerce may not be sufficient when taken alone. If appellant's position is correct, neither the state tribunals nor the federal tribunals would have jurisdiction in such a case. Clearly, such is not the law. In such a case jurisdiction is concurrent. If there is some necessity resulting from the benefit which will accrue to exclusively state commerce by reason of the putting in of the connection, this gives the state tribunals jurisdiction (Munn v. Illinois, 94 U. S. 113, 126);

and, in disposing of the case, they may take into consideration the whole necessity resulting from the whole benefit which will accrue to all classes of commerce.

But, even if this position was not correct, there is, in our opinion, ample evidence in this case of necessity resulting from the benefit which will accrue to exclusively state commerce, when considered alone, to justify the ordering of the connection in question.

We will go further. Under the statute, every presumption is in favor of the action of the commission, and the burden was upon appellant to show that such action was contrary to law. See Steenerson v. Great Northern, 69 Minn. 353, 72 N. W. 713. Appellant has totally failed to maintain that burden. No evidence at all was offered by appellant in the district court as to the want of necessity for the making of this connection, but it rested its case wholly on the evidence of the witnesses called in behalf of the petitioner. That evidence was not in appellant's favor, and certainly did not show conclusively that there was no necessity for this crossing.

2. Appellant further contends that said act of the legislature is unconstitutional and void, and the judgment entered in this case is erroneous, because they contravene numerous provisions both of the state and federal constitutions. Said law and judgment require appellant to exercise the power of eminent domain, construct a railroad track, operate the same, and exchange business with intersecting roads; and it is contended that all of this is outside of and beyond what its charter requires, and that, therefore, the law impairs the obligation of the charter contract between appellant and the state, deprives appellant of the equal protection of the laws, takes its private property without just compensation, deprives it of the right to contract with reference to its own business, etc.

All of these constitutional objections may be considered together. These two railroads are public highways, and all of these objections amount simply to this: It is wholly foreign to the purpose of two public highways of the same character to require them to connect where they cross each other, so that public traffic may pass from the one to the other. And, where a private corporation has been chartered to construct, maintain and operate such a public highway, with the right to charge reasonable compensation for its services in

71 M.—34

so doing, it is a violation of its charter to compel it to connect its highway with another intersecting highway of the same character, unless the right to require the connection is expressly reserved in the charter. We cannot so hold.

If appellant's position is correct, it has the constitutional right to completely isolate its railroad at any time by cutting it off from all connection with other railroads, unless the right to compel connections is expressly reserved in its charter. Its road commences at the village of Morton, in this state (an unimportant station at the terminus of a branch of the Minneapolis & St. Louis Railway), and extends westerly to Watertown, in South Dakota; so that it may at any time, and in spite of all public authority, be very completely isolated and cut off from all large commercial centers, if appellant sees fit so to cut it off. The legislature chartered appellant to construct, maintain and operate a public highway, not a cul de sac, or something worse, which has no connection with like highways either at its ends or sides. A railroad is an improved highway, on which certain modern appliances are used. It will not, as a general rule, serve fully the purposes for which it was intended, unless the connections between it and other like highways which cross or touch it are improved in like manner, and the same modern appliances are used in passing from one road to the other over those connections.

Again, why is not the doctrine advanced by appellant a two-edged sword? If the legislature cannot compel the making of such connections, because there is nothing in the charter expressly authorizing or requiring the making of them, why is it not ultra vires under such a charter, and without express legislative authority, to make such connections voluntarily? But who will contend that a railroad company may not, without express authority, and as incidental to its general powers, connect its tracks with the tracks of other railroads that extend to its road at its ends, or intersect it at its sides?

Appellant's property is dedicated to public use, "is affected with a public interest," and the legislature certainly has the power to regulate that use in a reasonable manner, unless appellant's charter expressly protects it from such regulation. See Munn v. Illinois, 94

U. S. 113, 126; State v. Wabash, 83 Mo. 144; Allnutt v. Inglis, 12 East, 527; Lord Hale's Treatise "De Jure Maris," 1 Harg. Law Tracts, 6.

Appellant was chartered to serve the public within the scope of its charter powers and franchises, in the best and most efficient manner possible. It was not, as it seems to contend, chartered to obstruct public traffic or serve the public the least that self-interest might dictate. Appellant cannot be allowed to obstruct the course of public traffic under the claim that, by putting in this connection and letting such traffic take its course, appellant will lose a large amount of revenue which it would otherwise earn. If, by reason of putting in the connection, its revenues will be so reduced that it will not, on its whole business, receive a reasonable compensation for its services, its remedy is by a readjustment of the whole or such part of its schedule of rates and fares as, under the circumstances, ought to be readjusted, in order to enable it to earn such reasonable compensation.

It is contended that, even if the connections were made, neither railway company could be compelled to deliver its loaded cars to the other, to be carried with their contents to their destination over the road of such other; that to compel appellant to deliver up its cars to be carried away from the line of its road to distant points would be in violation of its charter contract, and unconstitutional; that, for this reason, it is useless to compel the making of the connection in question, and therefore the legislative act fails of its purpose, and is unconstitutional and void.

Such interchange of cars between different railroads is a common and almost universal practice; yet there are few railroad charters which expressly authorize this practice. It would hardly be contended that such an act of interchange is ultra vires on the part of a railroad company whose charter is silent as to such authority. As incidental to the operation of its road, a railroad company has the power to interchange cars with other connecting companies, and this is the ordinary and usual way of doing business. We are clearly of the opinion that the legislature has the power to compel a common carrier to do business in the ordinary and usual way, and therefore may compel such interchange of cars as incidental to the

business for which the company was chartered. The supreme court of Iowa reached the same conclusion in Burlington v. Dey, 82 Iowa, 312, 48 N. W. 98. See, also, Atchison v. Denver, 110 U. S. 667, 4 Sup. Ct. 185; Peoria v. Chicago, 109 Ill. 135; Michigan v. Smithson, 45 Mich. 212, 7 N. W. 791; State v. Wabash, 83 Mo. 144.

The statute provides:

"In the event of that said railway companies fail to establish through joint rates, or fail to establish and charge reasonable rates for such through shipments,   *   *   *   it shall be the duty of the railroad and warehouse commission of this state   *   *   *   to establish reasonable joint rates for the shipment of freight and cars over any two or more connecting lines of railroad in this state, and to prescribe the reasonable rules under which any such cars so transferred shall be returned." Laws 1895, c. 91, § 3 (C).

Appellant suggests that cases may arise where it would be compelled to deliver its cars to another carrier, who is insolvent, or where the couplings, air brakes, or other appliances of the cars of one of the carriers will not match with those of the other, and where it would be unsafe to haul such other cars. It is only necessary to say that such cases can be disposed of when they arise. There is no suggestion that this is any such case. Appellant seems to contend that this statute attempts to make the two or more railroad companies partners for the purposes of such a through shipment; that it attempts to compel the making of a joint shipping contract, by which each company will be liable for all the defaults of the others in the through shipment; and that, therefore, the statute is unconstitutional and void. The statute merely provides that, in case all the railroad companies concerned in the through shipment fail to fix a reasonable total sum for the total haul, the commission shall do so for them. There is nothing in this which requires any company to assume any liability beyond its own line for the acts of others in making the haul.

There is nothing in the suggestion that the two appellants are competing roads, within the terms of subdivision F of section 3 of said statute, at least as far as regards the traffic for which the connection in question is required. This disposes of the case, and the judgment appealed from is affirmed.