STATE v. TOWER LUMBER COMPANY and Others.[1]

January 11, 1907.

Nos. 14,867—(16).

**Title of Act.**

The title to chapter 344, Laws 1905, *held* a sufficient compliance with the constitutional requirement that no law shall embrace more than one subject, which shall be expressed in its title.

**Obstructing Fish Commission.**

Section 56 of that act, providing that no person, company, or corporation shall obstruct the game and fish commission of the state while engaged in gathering fish spawn, as authorized by the statute, and imposing a penalty for a violation of its provisions, *held* to impose reasonable regulations upon the defendants, and all others, in the use of the stream of water referred to in the complaint, and is not obnoxious either to the state or the federal constitution.

Separate appeals by defendants Tower Lumber Co., Tower Log & Boom Co., and William Jalley, from an order of the district court for Ramsey county, Olin B. Lewis, J., overruling their separate demurrers to the complaint. Affirmed.

*Sullivan & Grant* and *Davis, Kellogg & Severance,* for appellants.

*Douglas & Griggs,* for the State.

BROWN, J.

Action to recover damages alleged to have resulted to the state from an alleged obstruction by defendants of the game and fish commission in the performance of its duties. Defendants interposed a general demurrer to the complaint, and appeal from an order overruling it.

The complaint alleges substantially the following facts: The defendants were at the time therein referred to engaged in the lumber and logging business on Pike river, in St. Louis county, this state. The state owns and maintains two fish hatcheries for the purpose of stocking the lakes and streams of the state with fish fry, and expends large sums of money annually in support of the same. During the month of April of each year a large number of fish belonging to the

[1] Reported in 110 N. W. 254.

pike family ascend the river above mentioned to the falls, some distance from its mouth, for the purpose of spawning, at which time the officers of the state, through the game and fish commission, are able to obtain large quantities of spawn for hatching and supplying the lakes of the state. During the period from the twenty third to the twenty eighth of April, 1905, the game and fish commission, representing the state, undertook the task of catching fish at this place and gathering their eggs, and was wrongfully and unlawfully interfered with and obstructed in its work by the conduct of defendants in floating logs down the river and over the falls, by reason of which the commission was wholly prevented from performing its duties during the season of that year.

It further appears from the complaint, and the stipulation made a part thereof, that Pike river lies wholly within the state of Minnesota, emptying into Lake Vermillion at a point one mile below the falls we have just referred to. Its main channel, in its natural condition, before the making therein of any improvements by defendants, during an ordinary stage of water, was a number of feet in depth, and for four or five miles above the falls, sixty feet in width. For a distance of one hundred feet from the point where the river empties into the lake it is possible to navigate the same with an ordinary tugboat. Above this point, for a distance of twenty miles or more, the river is navigable in ordinary rowboats.

The defendant Tower Log & Boom Company was organized as a corporation under title 1, c. 34, G. S. 1878, and with particular reference to section 2633, G. S. 1894, for the purposes set forth in that section; and the company has expended upwards of $3,000 in improving the river for the purpose of assisting in handling and driving logs therein. It improved the channel of the river by removing rocks therefrom and placing sheer booms across the same to collect and hold logs as floated down the river. The logs referred to in the complaint, and which the state alleged were wrongfully floated down the river and over the falls during the time the fish commission was performing its duties, belonged to the Tower Lumber Company. It was necessary to float the logs down the river during the season of 1905, but they could have been floated down after the first of May of that year, and subsequent to the time the game and fish commission was

engaged in its work in the river. The logs had been gathered prior to this time and lodged in booms above the falls, and were by defendants liberated therefrom and floated over the falls in the ordinary course of business, but with full notice and knowledge of the fact that the agents of the game and fish commission were at that time gathering fish spawn below the falls, and after notice to the effect that the agents of the commission would be so engaged at that time.

. This action is brought under the provisions of section 56, c. 344, p. 621, Laws 1905, which provides as follows:

> Sec. 56. Obstructing Commission—Gathering Spawn—No person shall obstruct the commission, its executive agent or any warden appointed by it while engaged in gathering fish spawn, nor shall any person place in any stream or river any logs or other debris at any time when said commission and its employes are gathering spawn, or about to gather spawn or catch fish for that purpose in any such stream or river. Any person violating any of the provisions of this section shall be deemed guilty of a misdemeanor. The commission may institute a civil action in the name of the state to recover from any person or persons obstructing it in the performance of its duties, or who shall place logs or other debris in such stream, for all damages resulting therefrom, and in addition thereto may in such action enjoin such party or parties from doing the acts hereby prohibited.

It is urged by defendants in support of the demurrer to the complaint (1) that chapter 344, of which the section in question forms a part, is unconstitutional and void, for the reason that the title thereof is not sufficiently broad and comprehensive to justify the enactment of this particular section; and (2) if this contention is not sustained, that the section is unconstitutional and void, in that (a) it violates section 10 of article 1 of the constitution of the United States, prohibiting a state from passing any law impairing the obligation of contracts, (b) it violates the fourteenth amendment to the constitution of the United States, in that it deprives defendants of their property without due process of law, and (c) it violates section 13 of article 1 of the constitution of Minnesota, which provides that private property shall

not be taken or damaged for public use without just compensation first paid or secured.

1. The title to the act is as follows: "An act for the preservation, propagation, protection, taking, use and transportation of game, fish, and certain harmless birds and animals." The statute enacted under this title is a comprehensive game law, providing for the preservation and protection, and restricting the time and manner in which wild game may be taken, and imposing numerous penalties for a violation of its various provisions. Section 56, here before the court, is a necessary detail of the legislation and pertinent to the general subject as expressed in the title. Under the numerous decisions of this court we have no difficulty in holding it amply sufficient. State v. Board of Control, 85 Minn. 165, 88 N. W. 533; Ek v. St. Paul Permanent Loan Co., 84 Minn. 245, 87 N. W. 844; Winters v. City of Duluth, 82 Minn. 127, 131, 84 N. W. 788; State v. Cassidy, 22 Minn. 312, 21 Am. 765.

2. The question whether the statute is unconstitutional and void in the respects contended by defendants depends, in a measure, on its construction. Other sections of the statute of which this forms a part authorize the game and fish commission to gather spawn for the purpose of stocking the lakes of the state with fish fry, and the section under consideration provides that no person shall obstruct the commission, its executive agent, or any person appointed by it while engaged in gathering the same, nor shall any person place in any stream or river any logs or debris at any time when the said commission and its employees are gathering spawn, or are about to do so; and a penalty is provided for its violation.

It is urged in support of the claim that the statute violates the several provisions of the constitution referred to, that it grants to the commission arbitrary powers, and enables its members wrongfully, unnecessarily, and capriciously to interfere with defendant's business and indefinitely to tie up their affairs by a simple notice that its agents intend to gather spawn in the river at such time or times as may seem convenient to them.

We construe the statute not to grant the arbitrary powers suggested, but as a reasonable regulation of the use of this river. There can be no question of defendants' right to make use of the stream for the orderly conduct of their business, nor can there be any doubt of

the authority of the state, in the exercise of the police power, to provide that during the time its game and fish commission is engaged in the work of gathering spawn, as provided by the statute, persons making use of the river shall suspend for a reasonable time such operations thereon as will, if carried on, interfere with the work of the commission. If the statute were to be construed in accordance with its strict letter, to the effect that a mere deposit of logs in the stream at a time when the commission is employed in its labors, without regard to whether such act would in any manner interfere with the commission, there would be merit in the contention of defendants. But we do not give the statute that interpretation. It must be given a liberal construction. Its main purpose was to regulate the conduct of those making use of the river during the time the commission was engaged in its work, and to prohibit any and all such persons from unnecessarily interfering with its work. The commission must act reasonably and engage in no arbitrary conduct or unreasonable delay in its work. A reasonable consideration of the rights of all parties is all the statute seeks to require, and this should be observed by its members. So construed, the statute is obviously not obnoxious either to the state or to the federal constitution.

The river in question is a public highway, within the meaning of section 2385, G. S. 1894, and subject in its use by the public to such reasonable regulations as the legislature may impose. It does not matter in the case at bar that the defendant boom company is a corporation created for the express purpose, and with special contractual rights and privileges in the use of this particular stream. Georgia R. & B. Co. v. Smith, 128 U. S. 179, 9 Sup. Ct. 47, 32 L. Ed. 377; Gladson v. Minnesota, 166 U. S. 430, 17 Sup. Ct. 627, 41 L. Ed. 1064. It has no exclusive right to the use of the stream, but its possession and use thereof is subject to reasonable legislative regulation. Osborne v. Knife Falls Boom Corp., 32 Minn. 412, 21 N. W. 704, 50 Am. 590; Crookston Waterworks, P. & L. Co. v. Sprague, 91 Minn. 461, 98 N. W. 347, 99 N. W. 420, 64 L. R. A. 977, 103 Am. St. 525.

It is thoroughly settled that acts of the legislative department of government designed for the protection and preservation of game and fish are valid as an exercise of the police power. State v. Rodman, 58 Minn. 393, 59 N. W. 1098; Lawton v. Steele, 152 U. S. 133, 14

Sup. Ct. 499, 38 L. Ed. 385; Wisconsin, M. & P. R. R. v. Jacobson, 179 U. S. 287, 21 Sup. Ct. 115, 45 L. Ed. 194 (Jacobson v. Wisconsin, M. & P. R. Co., 71 Minn. 519, 74 N. W. 893, 40 L. R. A. 389, 70 Am. St. 358). And it is equally well settled that an exercise of that power, when public interests require its exercise, cannot be contracted away, and whatever contract rights the boom company may have in the premises, they are subordinate to the rights of the state in this respect. It appears from the complaint, as already indicated, that the spawning season for pike in the river in question is during the latter part of April of each year, and continues for a period of about a week; that large numbers of fish then congregate below the falls of this river and present the only opportunity of taking them. The spawn cannot be collected at any other time, and unless it is within the power of the legislature to prohibit an unnecessary interference with the work of the commission during that period the interests of the fish industry would be seriously hampered and damaged. To require defendants, and all other persons, to desist from floating logs down the river during the period stated, is, we think, a reasonable requirement, and the statute is not obnoxious to any of the provisions of the constitution of the state or of the United States pointed out by appellants.

Order affirmed.