The State of Florida upon the relation of Will-
iam B. Lamar as Attorney-General of the
State of Florida, and Benjamin S. Liddon and
John M. Barrs as special counsel for the Rail-
road Commissioners of the State of Florida,
Plaintiff in Error, vs. The Jacksonville
Terminal Company, a corporation under the
laws of Florida, Defendant in Error.

1. There is no impropriety in naming the special counsel for the
   Railroad Commissioners, along with the Attorney-General, as
   relators in a proceeding by mandamus instituted by the At-
   torney-General and special counsel in compliance with the spe-
   cial directions of the commissioners, to compel the observance
   by a terminal company of a regulation made by the commis-
   sioners under the provisions of Chapter 4700, laws of 1899.

2. Where the Railroad Commissioners, under the power conferred
   on them by section 6, Chapter 4700, laws of 1899, have made
   a regulation requiring a terminal company corporation to ad-
   mit a railroad company to the privileges and benefits of its
   common passenger station or terminal, and it appears that the
   commissioners had power to make the regulation, such regula-
   tion is, under section 8 of said Chapter 4700, to be deemed and
   held to be *prima facie* reasonable and just, and a writ of man-
   damus to compel observance of said regulation is properly ad-
   dressed to the terminal company where the duty devolves upon
   it as a corporation, and not upon a particular officer of the
   company.

3. The last clause of section 30, Article XVI of the constitution of
   1885, "and shall provide for enforcing such laws by adequate
   penalties and forfeitures," does not by implication forbid the
   use of mandamus and other remedies for enforcing duties im-
   posed by laws passed to accomplish the purposes specified in
   the first clause of the section. The clause quoted is a com-
   mand to the legislature, leaving it no discretion upon that sub-
   ject, but being silent as to other remedies for enforcing duties
   growing out of laws passed to accomplish the purposes speci-
   fied in the first clause of the section, it rests in the legislative
   discretion to provide such as it may see fit, and the courts
   may apply such of the ordinary remedies as may be applicable.

4. An alternative writ of mandamus to compel the observance of
   a regulation made by the Railroad Commissioners under the
   powers conferred by Chapter 4700, laws of 1899, requiring a
   terminal company to admit a railroad company to the privileges
   and benefits of its common passenger station or terminal, and
   fixing rates for the uses and privileges of such terminal to be
   paid by such railroad company, need not allege any fact tend-
   ing to show that the rates so fixed are reasonable and just, as
   such regulation is under the statute to be deemed and held to be
   *prima facie* reasonable and just.

5. Mandamus will lie to compel the observance of a regulation
   made by the Railroad Commissioners under the powers con-
   ferred by Chapter 4700, laws of 1899, requiring a terminal com-
   pany to admit a railroad company to the privileges and benefits
   of its common passenger station or terminal, notwithstanding
   an action for damages or proceedings to enforce the penalty
   denounced by the statute for failure to comply with the regu-
   lation might be maintained, as such remedies are inadequate
   and neither of them is adapted to secure the performance of
   the duty to the public imposed by such regulation.

6. A regulation made by the Railroad Commissioners under the
   powers conferred by Chapter 4700, laws of 1899, requiring a
   terminal company organized under the laws of this State, and
   operating a common passenger terminal station wholly within
   this State for the purpose of furnishing terminal facilities to
   railroad common carriers entering therein, to admit a railroad
   company operating a railroad from a point in Florida to a
   point in the State of Georgia to the privileges and benefits of
   its said passenger station or terminal and fixing just and rea-
   sonable rates for the uses and privileges of such terminal to be
   paid by such railroad company, is not an unconstitutional in-
   terference with interstate commerce, nor does it deprive the
   terminal company of its liberty or property without due pro-
   cess of law, nor does it constitute an appropriation of the
   terminal company's property to a public use so as to require
   the compensation therefor to be ascertained by a jury of twelve
   men within the meaning of section 29, Article XVI of the
   constitution of 1885.

7. Under Chapter 4700, laws of 1899, a railroad operated from a
   point in this State to a point in another State is, in so far as
   the road is located within this State, and in so far as its busi-

ness is confined to traffic in this State, subject to the regulation, control and supervision of the Railroad Commissioners.

8. Section 30, Article XVI of the constitution of 1885, does not prohibit considerations of the public interests, comfort, safety and convenience in determining what is an abuse, an unjust discrimination or an excessive charge within the meaning of those terms as used in that section.

9. The power conferred upon the Railroad Commissioners by section 6 of Chapter 4700, laws of 1899, with reference to requiring the admission into passenger terminals of railroad companies desiring or required by the commissioners to enter, and to fixing reasonable rates of compensation for the uses of such terminals, has no reference to a terminal station owned and used exclusively for its own traffic by any common carrier or railroad company, but applies to those passenger terminals owned or operated by a terminal company or individual, or by a railroad company in connection with its main line when such terminal company, individual or railroad company undertakes the public business of furnishing terminal facilities to railroad common carriers.

10. Chapter 4700, laws of 1899, is not subject to the constitutional objection that it embraces more than one subject and matter properly connected therewith.

11. Section 6 of Chapter 4700, laws of 1899, relating to the power of the Railroad Commissioners to compel admission into certain passenger terminals of railroad companies desiring or required by the commissioners to enter, and to fixing reasonable rates for the uses and privileges thereof, apply to all terminals of the class or character thereby contemplated, whether owned or operated by corporations, companies or individuals, and do not, therefore, discriminate between corporations and individuals who may own or operate terminals of the same class or character.

12. Under sections 8, 10, 17, 18 and 21 of Chapter 4700, laws of 1899, ample provision is made to enable the Railroad Commissioners to ascertain the facts necessary to be known in order to arrive at and fix just and reasonable rates for the uses of passenger terminals and the privileges thereof, which they are by section 6 empowered to prescribe and enforce.

Writ of error to the Circuit Court for Duval county.

## Statement.

On September 11, 1899, the Circuit Court of Duval county issued an alternative writ of mandamus directed to defendant in error. It alleged that by a petition caused by the Railroad Commissioners to be filed in the name of the State by William B. Lamar as Attorney-General, and Benjamin S. Liddon and John M. Barrs as special counsel for such commissioners, it was made to appear that on September 4, 1899, at the city of Jacksonville, the commissioners being then in session in a certain cause pending before them between the Atlantic, Valdosta & Western Railway Company, a body corporate under the laws of Georgia, engaged in operating a line of railroad as common carriers of freight and passengers from the city of Valdosta, in the State of Georgia, to the city of Jacksonville, in the State of Florida, and defendant in error, in which cause the railway company had previously filed its petition with and before said commissioners praying for an order to require the admission of the said railway company to the union depot and terminal facilities of the defendant in error, and to fix just and reasonable rates and charges to be paid to said defendant in error by said railway company for the uses of such depot and terminals and the privileges thereof, and to which petition the defendant in error had filed its answer, and in which cause the commissioners had given a full hearing to the parties, testimony being introduced on both sides and argument of counsel being heard, and the commissioners having viewed the premises in person and investigated the business of defendant in error, they did on September 4, 1899, at their session conclude and render in said cause a judgment and order substantially as follows: that the railway company and the terminal company are subject to the regu-

lations, supervision and control of the said railroad commission under the provisions of the act of the legislature of the State of Florida, and that it is essential to the best interest and convenience of the public that the said railway company should be furnished with the facilities by said terminal company in its common passenger station at the city of Jacksonville, the commission finding that the facilities of said terminal company are sufficient to enable it not only to accommodate said railways now furnished by it, but also to accommodate the said Atlantic, Valdosta & Western Railway Company, and thus afford a common passenger station or terminal to the railroads running into Jacksonville; that the terminal company is ordered to permit the said railway company to connect its railway track at the northwest end of the tracks of the said terminal company and to enter into and run out of the common passenger station of the said terminal company in the city of Jacksonville, with its passengers, trains and engines, and that the said terminal company shall accord to and furnish the said railway company all and like terminal facilities which it now accords to or may hereafter accord to other railways or railway companies entering said terminal station, including fair and equal participation in all the rights, privileges and connections, interchanges of traffic and other benefits of the said terminal station upon the payment, however, to said terminal company by said railway company, as a reasonable compensation for such services and uses by said railway company of said terminal station, of the sum of $1,275 for each quarter or period of three months, payable in advance. And that in addition to such sums the railway company shall pay to said terminal company on the wheelage basis or according to master car builders' rules as one or the other may be applicable, its proportion of the expenses of the main-

tenance, operation, taxes and repairs of the said terminal property and in full for such supplies and repairs as may be required by and furnished to or done for said railway company, the same to be payable as the same may accrue and be demanded by said terminal company, and that to secure the payment thereof the said railway company shall deposit monthly with the terminal company on demand such reasonable sum in lawful money of the United States as may be demanded of said railway company by the said terminal company; that any rate or rule of compensation fixed by such order shall be subject to further adjustment of such commission at any time on application of said parties, or either of them, or of its own motion upon due notice; that upon payment or tender of said sum of $1,275 by the said railway company to the said terminal company it shall be the right of the former to make, and the legal duty of the latter to allow, and the terminal company shall thereupon allow connection with its tracks as is by said judgment above ordered, and thereon to run and allow the admittance of the trains and engines of the railway company as aforesaid, and that it shall likewise be the duty of said railway company, and said company is hereby ordered to make forthwith such tender, and to make such connections and to run its passenger trains into and out of said station and to continue to do so, paying at the beginning of each quarter, or three months, to said terminal company all charges for such facilities as above specified to be paid by said railway company to said terminal company. That it was further provided by said order and judgment that nothing therein shall be construed to render said terminal company liable for any damages to third persons occasioned by the negligence of the railway company or its agents or employes, but said railway company shall be liable for such damages,

and that nothing in said order shall require any interference with or change any of the established schedules now in operation at such station, and that said order shall take effect and be operative forthwith, and stand as made until the further order of the commission to be made only after reasonable notice and opportunity to the parties interested to be heard; that at said meeting of said Railroad Commissioners held September 4, 1899, it was, among other things, ordered by them that said order be served by the sheriff of Duval county, Florida, upon the railway company and the terminal company, and that in the event of failure of either of said companies to comply with the provisions of the order the Attorney-General of the State and the special counsel for the commissioners should institute such legal proceedings as may be necessary to enforce a compliance with the provisions of the order; that on September 8, 1899, a duly certified copy of the order was served upon and delivered to said railway company and said terminal company; that thereafter, on the same day, the railway company did tender to the terminal company the said sum of $1,275 in lawful money of the United States, and offered to secure the payment thereon by monthly deposit in advance with said terminal company of such reasonable sum in lawful money of the United States as the said terminal company might demand as and for the purposes provided in said order, and did apply to said terminal company to be let into its terminal station at the city of Jacksonville, and to be permitted to connect the tracks of the said railway company at the northwest end of the tracks of the said terminal company, and to enter into and run out of said common passenger station of the said terminal company with its passenger trains and engines, but the said terminal company did then and there, and notwithstanding said judgment and

order, and said tender, refuse to permit the said railway company to connect its railway tracks at the northwest end of the tracks of the terminal company or to enter into or run out of the said common passenger station of said terminal company with its passenger trains and engines, and the said terminal company did likewise refuse, and still refuses, to accord and furnish to the said railway company all and like terminal facilities which it now accords to other railways and railway companies entering said terminal station, and said terminal company has refused, and still refuses, to otherwise comply with all and singular the aforesaid and other commands and directions of said order and judgment of said commissioners made on said 4th day of September, 1899; that said railroad commissioners, said Atlantic, Valdosta & Western Railway Company and the people of the State of Florida are entirely without remedy in the premises unless it be afforded by the interpretation of this Honorable Court through the writ of mandamus.

The writ commanded the defendant in error, forthwith, upon the tender of said sum of $1,275 in lawful money of the United States and the monthly deposit with it by the railway·company of such reasonable sum in lawful money of the United States as might be demanded by the terminal company to secure the payment by the railway company required by said order, to permit the railway company to connect its railway track at the northwest end of the tracks of the terminal company and to enter into and run out of the common passenger station of the terminal company in the city of Jacksonville, with its passenger trains and engines, and to accord to said railway company all and like terminal facilities which it now accords to or may hereafter accord to other railway companies entering said terminal station, including fair and equal participation in all the rights, privi-

State v. Jacksonville Term. Co.—Statement of Case.

leges, connections, interchanges of traffic and other ben-
efits of said terminal station upon the payment, how-
ever, to the said terminal company as a reasonable com-
pensation for such services and uses by said railway
company of said terminal station of the sum of $1,275
for each quarter, or period of three months, payable in
advance, the said railway company to pay in addition to
such sums to said terminal company on a wheelage basis,
or according to master car builders' rules, as one or the
other may be applicable, its proportion of the mainten-
ance, operation, taxes and repairs of the said terminal
property, and in full for such supplies and repairs as may
be required by and furnished to or done for said railway
company, the same to be payable as the same may accrue
and be demanded by said terminal company, and to
secure the payment thereof the railway company shall
deposit monthly with the terminal company on demand
such reasonable sum in lawful money of the United
States as may be demanded of said railway company by
said terminal company, it being understood and provid-
ed that any rate or rule of compensation fixed by said
order is to be subject to further adjustment at any time
on application of said railway or terminal company, or
both of them, by said commission, or by said commis-
sion on its own motion, upon due notice, it being under-
stood that nothing in said judgment or order shall ren-
der said terminal company liable for any damages to
third persons occasioned by the negligence of said rail-
way company, its agents or employes, nor shall anything
in said judgment or order require any interference with
or change in the established schedules now in operation
at said terminal station, or to show cause why said ter-
minal company has not done so before the Circuit Court
of Duval county on September 20, 1899. A copy of the
order of the Railroad Commissioners, certified by the

chairman of the board, was attached to the alternative writ.

The terminal company moved to quash the alternative writ upon the following grounds:

1. There is no warrant in law for the filing of a petition for mandamus on the relation or in the names of Benjamin S. Liddon and John M. Barrs as special counsel for the Railroad Commissioners, and no such authority is anywhere alleged.

2. The Railroad Commissioners can not constitutionally have the writ of mandamus to enforce their mandates, judgments or decrees.

3. The Railroad Commissioners had not and have not authority to consider the right of the Atlantic, Valdosta & Western Railway Company to enter the station of the Jacksonville Terminal Company with any trains, locomotives or cars other than those engaged in the transportation of persons and property as passengers and as freight from all points in Florida to all points in Florida.

4. The Railroad Commissioners erred in rendering any judgment in the matter of the petition of the Atlantic, Valdosta & Western Railway Company.

5. The Atlantic, Valdosta & Western Railway Company is not subject to the regulation, supervision or control of the Railroad Commissioners (so far as is here involved) relating to the carrying of passengers and of property as such from points in Florida to points in Florida.

6. The Railroad Commissioners had no authority to consider the best interests and convenience of the public other than as the public interest and convenience were involved in persons and freight being transported from points in Florida to points in Florida.

7. It was wholly extrajudicial for the Railroad Com-

mission to find as it did that it was for the best interest and convenience of the public other than those traveling wholly in Florida, and that the Atlantic, Valdosta & Western Railway Company shall be furnished facilities by the Jacksonville Terminal Company, and it is not material as a judgment or conclusion of fact as to what the capacity of the respondent was and is.

8. The Railroad Commissioners had and have no power to order the Jacksonville Terminal Company to permit the Atlantic, Valdost & Western Railway Company to connect its track with the track of the Jacksonville Terminal Company at the northwest end of the tracks of the latter, nor to direct the use of its tracks.

9. Said order was the taking of private property of one corporation for the use of another in a manner not authorized by law and is in violation of the constitution of Florida.

10. The Railroad Commissioners had no more authority to direct the appropriation, as it has done, of the property of the Jacksonville Terminal Company, than had the Atlantic, Valdosta & Western Railway Company to take the tracks and use thereof without permission of the Jacksonville Terminal Company.

11. The alternative writ of mandamus embodies and is an effort to appropriate the private property of the Jacksonville Terminal Company for the use of the Atlantic, Valdosta & Western Railway Company without proper compensation ascertained by a jury as required by the constitution and laws of Florida.

12. It is nowhere shown or averred that the rate prescribed by the Railroad Commissioners to be paid for the facilities and service of the Jacksonville Terminal Company was not any less than those ascertained by them as charged and paid by the other patrons of the

Jacksonville Terminal Company for a like enjoyment of such facilities and service.

13. The Railroad Commissioners had no authority under the constitution of Florida to make the several orders and judgments herein, or any of them.

14. It is not true that the Atlantic, Valdosta & Western Railway Company has no other remedy as set forth in the alternative writ of mandamus, and even if it be true that said company had no other remedy and can not enjoy the facilities and have the service of the property of the Jacksonville Terminal Company and the use thereof under the plain statutes of Florida, with rights thereunder enforcible in its own suit in the courts of Florida, then no such rights are conferred upon the Atlantic, Valdosta & Western Railway Company.

15. The alternative writ does not anywhere name the officers who have power to comply with its application or show that any officers of the respondent have power to comply with said application as set forth in said alternative writ.

16. Said alternative writ does not show, *prima facie*, a clear, legal right existing in the relators to have done the thing they seek to enforce.

17. Because it is the taking of private property without due process of law.

On September 30, 1899, the court entered judgment granting this motion, quashing the alternative writ and discharging the defendant in error without day, from which the present writ of error was taken.

The assignments of error question the propriety of this judgment. The motion to quash involves a consideration of the provision in the fourteenth amendment to the constitution of the United States, "nor shall any State deprive any person of life, liberty or property without due process of law," and of several provisions in our

constitution of 1885, and in the amended railroad commission law of 1899, which we here proceed to state. Section 12, Declaration of Rights, provides, among other things, that no person shall "be deprived of life, liberty or property without due process of law." Section 1, Article III: "The legislative authority of this State shall be vested in a Senate and a House of Representatives, which shall be designated 'The Legislature of the State of Florida' * * * ." Section 16, Article III: "Each law enacted in the legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title * * ." Section 29, Article XVI: "No private property nor right of way shall be appropriated to the use of any corporation or individual until full compensation therefor shall be first made to the owner, or first secured to him by deposit of money, which compensation, irrespective of any benefit from any improvement proposed by such corporation or individual, 'shall be ascertained by a jury of twelve men in a court of competent jurisdiction, as shall be prescribed by law." Section 30, Article XVI: "The legislature is invested with full power to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers in transporting persons and property or performing other services of a public nature, and shall provide for enforcing such laws by adequate penalties or forfeitures." Chapter 4700, laws of 1899, is entitled "An act to revise and amend an act entitled 'an act to provide for the regulation of railroad schedules, freights, express, sleeping car and passenger tariffs, and building of freight and passenger depots in this State; to prevent unjust discrimination in the rates charged for the transportation of passengers and freight, and to prohibit

railroad companies, corporations, persons and all common carriers in this State from charging other than just and reasonable rates and to enforce the same, and to prescribe a mode of procedure and rules of evidence in relation thereto, and to provide for the appointment and election of commissioners and to prescribe their duties and powers,' and to authorize said commissioners to regulate, supervise and control the use and the charges for the use of, and the admission to, passenger terminals and union depots, and to vest said commissioners with judicial powers and provide remedies for the enforcement of the provisions' of this act." Section 1, among other things, provides for the selection of three commissioners, prescribes their qualifications, salaries, the oath and terms of office and requires them to elect one of their number chairman. Sections 3 and 4 provide that if any railroad, railroad company or common carrier shall charge, collect, demand or receive more than a fair or reasonable rate of toll or compensation; or shall make any unjust discrimination in its rates or charges of toll or compensation for the transportation of passengers or freight of any description, or for the use and transportation of any railroad car upon its railroad or tracks, or upon any of the branches thereof, &c., the same shall be dealt with as thereinafter provided. Section 5 provides that "the provisions of this Chapter shall apply to the transportation of passengers and property and to the receiving, delivery, storage and handling of property wholly within this State and shall apply to all railroad corporations, railroad companies and common carriers engaged in this State in the transportation of passengers or property by the railroads or common carriers therein from any point within this State to any point within this State." It specifies what the terms railroad, railroad company or railroad corporations and

common carriers, as used in this act, shall include, and among these specifications it is provided that the term *railroad* shall include "all passenger terminal companies or union depot companies, whether operating train service or not;" that "the term railroad corporation or railroad company as used in this act shall be deemed to mean all corporations, associations, partnerships, trustees, agents, assignees and individuals, all express companies and sleeping car companies included now owning or operating, or which may hereafter own or operate any railroad in whole or in part in this State or owning or operating any train or car service on any railroad in this State," and that the term common carriers shall include "all companies, and any person or persons owning or operating railroads, passenger terminals or union depots for the purpose of receiving, delivering or transferring passenger traffic to and from the place or city in which said terminal or union depot may be situated, or to or from one or more of the railroads operating its train service into said terminal or depot from or to any other such railroad or railroads."   Section 6 requires the commissioners to make reasonable and just rates of freight and passenger tariffs to be observed by all railroads, railroad companies and common carriers doing business in this State, over their respective lines or connecting lines; to make reasonable and just regulations for the observance of the same as to charges at any and all points for the necessary handling and delivery of all kinds of freight and transportation of passengers and for the prevention of any unjust discrimination in connection therewith; to make reasonable and just rates of charges for the use and transportation of all kinds of railroad cars conveying all kinds of freight to and from any and all points in this State, empowers them to make reasonable and just joint rates for all connecting rail-

roads doing business in this State as to all traffic or
business passing from one of said railroads to another
and to require the establishment of such freight and
passenger depots as the condition of the road, safety
and convenience of passengers and prompt delivery of
freight and the most convenient transfer of passengers
and freight may justify, and for the establishing of such
schedules for the arrival and departure of all trains at
such depots as public comfort and convenience may
require, and provides that the commissioners "shall have
the power to regulate, supervise and control all passen-
ger terminal or union depot companies, whether owned
or operated by any railroad in connection with its main
line, or by a separate company organized for that pur-
pose, and to require the admission into such union depot
or terminal by the owner, lessee or operator thereof, of
any railroad company or companies which may desire
to enter such terminal or union depot, or which may be
required to do so by order of the said commissioners,
and to compel the person or company operating said
depot or terminal to furnish to the railroad entering
the same, fair and equal participation in all the rights,
privileges, connections, interchanges of traffic and other
benefits of said depot or terminal, and to prescribe and
enforce just and reasonable rates for the uses of such
terminal or depots, and the privileges thereof, and to
require two or more railroads entering the same town
or city to erect, operate and maintain a joint passenger
terminal or union depot and to provide for the inter-
change of traffic between said railroads." This section
also invests the commissioners with other powers,
among which is "to direct and control all other matters
pertaining to railroads that shall be for the good of the
public." Section 8 requires the commissioners to make
and furnish to each railroad corporation doing business

in the State a printed or written schedule of just and reasonable rates and charges for transportation of freights, passengers and cars on its railroad or railroads under its control or management, and provides that such schedule certified by the chairman shall be admitted in evidence without necessity for other proof, and shall in all suits brought against any railroad corporation wherein is involved the rates of such railroad corporation for the transportation of freight, or transportation or use of any kind of car, or for transportation of any passenger or passengers, or for any unjust discrimination in relation thereto, be deemed and taken in all courts as *prima facie* evidence that the rates fixed in such schedule are just and reasonable rates of charges for the transportation of freight, cars and passengers upon the railroads. It also gives the commissioners power to change or revise any schedule, requires them before changing, revising, fixing, adopting or allowing any such schedule or prescribing any such rules and regulations, to give notice in the manner therein directed and entitles all railroad corporations and persons interested to a just and fair hearing before the commissioners, and also provides, among other things, that "all the rules and regulations made and prescribed by said commissioners for the transportation of persons and property on the railroads subject to the provisions of this act, or to prevent unjust discrimination or other abuses by them, shall be deemed and held to be *prima facie* reasonable and just, and are made *prima facie* evidence in the same manner the said schedules are made *prima facie* evidence." Section 10 requires every railroad, railroad company and common carrier to furnish the commissioners on or before August 1st, each year, a full and true statement under oath of the proper officer, of the affairs of the company as they existed on the 1st day of July preceding,

394 SUPREME COURT. [41st Fla.

State v. Jacksonville Term. Co.—Statement of Case.

specifying certain matters to be so reported. Section 12, among other things, provides penalties not exceeding $5,000 against railroads, railroad companies or other common carriers for violating or disregarding any rate, schedule, rule or regulation provided or prescribed by the commissioners, or for failure to make reports, or for otherwise violating any provision of the act, to be fixed and imposed by the commissioners upon not less than ten days' notice after a hearing, and authorizes suits to be brought by the commissioners in the name of the State of Florida to recover same. It provides that the fact of the fixing and imposing of such fine by the commissioners shall constitute *prima facie* evidence of everything necessary to create the liability or require the payment of the fine or penalty so fixed and imposed and to authorize a recovery thereon in any action or proceeding brought by the commissioners, and that a copy of the entry in the minute-book of the commissioners of the order fixing and imposing such fine or penalty certified by the chairman shall constitute *prima facie* evidence of the fact that such fine or penalty was fixed and imposed by the commission. Section 13 requires the commissioners to institute certain suits for the benefit of certain individuals wronged, injured or discriminated against by railroads, railroad companies and common carriers in violation or disregard of any rule, rate or regulation provided by the commissioners, and authorizes such persons under certain circumstances to institute suits in their own names, and fixes the measure of damages to be recovered. Section 14, among other things, provides that "in all cases under the provisions of this act the rules of evidence shall be the same as in civil actions except as hereinbefore otherwise provided." By section 17 the commissioners are given power to issue subpoenas, subpoenas *duces tecum* and other

writs to secure testimony and books and papers, and attachments to compel obedience to such writs, and power to punish for contempt. Each commissioner is authorized to administer oaths. The board may author-ize a member to make investigations or examinations outside of their office anywhere in the State, and such member is required to report to the full board the result of his investigations. The secretary of the board and the sheriffs of the State are authorized to serve any subpoena, notice or other process or paper issued by the commissioners. By section 18, any officer, agent or em-ploye of any railroad, railroad company or other com-mon carrier who wilfully refuses to furnish any report required by the commissioners as necessary to the pur-pose of the act, or wilfully and unlawfully hinders, de-lays or obstructs the commissioners in the discharge of their duties may be by them punished for contempt. Section 21 provides that "said commissioners may at their discretion cause to be instituted in any court of competent jurisdiction in this State by the Attorney-General, State Attorney or special counsel, in the name of the State, proceedings by or for man-damus, injunction, mandatory injunction, prohibition. or procedendo, against any such company or common carrier subject to the provisions of this act, or against any officer or officers, agent or agents thereof, to com-pel the observance of the provisions of this act or any rule, rate or regulation of the commissioners made thereunder, or to compel the refunding of any moneys exacted in violation of any of the provisions of this act." It also provides that the "commissioners are hereby given and granted full authority to do and perform any act or thing necessary to be done to effectually carry out and enforce the provisions and objects of this act.

There are various other provisions in the act, but

they are immaterial to the questions raised by the motion to quash.

The other facts in the case are stated in the opinion of the court.

*Geo. P. Raney, Alex. W. Smith, Chas. S. Adams, E. J. L'Engle, W. B. Lamar, Attorney General, and John M. Barrs, special counsel,* for Plaintiff in Error.

*John E. Hartridge and John A. Henderson,* for Defendant in Error.

CARTER, J. (after stating the facts):

I. First ground of the motion to quash: We perceive no impropriety in naming Benjamin S. Liddon and John M. Barrs, in their capacity as special counsel for the Railroad Commissioners, along with the Attorney-General, as relators in this proceeding. Section 21 of the railroad commission law expressly authories the commissioners to cause to be instituted by the Attorney-General, State Attorney or special counsel, in the name of the State, proceedings by or for mandamus, &c., and it appears from the allegations of the alternative writ that the commissioners directed the Attorney-General and special counsel to institute the necessary legal proceedings to enforce compliance with the regulation here sought to be enforced, and that these proceedings were instituted by the Attorney-General and special counsel in obedience to such directions.

II. Fifteenth ground of the motion to quash: Section 6 of the railroad commission law gives the commissioners power to require the admission into certain passenger terminals by the owner, lessee or operator thereof of any railroad company under circumstances therein stated. The commissioners have made a regulation requiring the Jacksonville Terminal Company, a Florida

State v. Jacksonville Term. Co.—Opinion of Court.

corporation, to admit the Atlantic, Valdosta & Western Railway Company to the privileges and benefits of its common passenger station or terminal at Jacksonville. This regulation imposes the specific duty upon the corporation, and not upon any particular officer of that company. The commissioners also found that the facilities of the terminal company were not only sufficient to enable it to accommodate the railways then furnished by it, but also to accommodate the Atlantic, Valdosta & Western Railway Company. The regulation here sought to be enforced is under section 8 of the law to be deemed and held to be *prima facie* reasonable and just, and under section 21 it may be enforced by mandamus against the terminal company, upon whom the duty to perform the order rests. Under these circumstances it affirmatively appears that the terminal company has power to comply with the regulation, and as the duty devolves upon it as a corporation, and not upon any particular officer thereof, the writ is properly directed to the corporation. Angell & Ames on Corporations, §718; High's Ex. Legal Rem. §440; State *ex rel.* Grady v. Chicago, M. & N. R. R. Co., 79 Wis. 259, 48 N. W. Rep. 243.

III. Second ground of the motion to quash: It is not claimed that mandamus would not ordinarily be an appropriate remedy to coerce the regulation here sought to be enforced, but it is contended that the last clause of section 30, Art. XVI of the constitution, "and shall provide for enforcing such laws by adequate penalties or forfeitures," by implication forbids the use of mandamus and other remedies for enforcing duties imposed by laws passed to accomplish the purposes specified in the first clause of the section. The argument is that the section grants a power and prescribes the mode of exercising it, and that the use of the words "penalties or

398            SUPREME COURT.            [41st Fla.

State v. Jacksonville Term. Co.—Opinion of Court.

forfeitures" implies the exclusion of other remedies, upon the maxim *expressio unius est exclusio alterius*. The constitution of 1885 is a revision of that of 1868, and the section invoked is a new one, first introduced in the 1885 constitution. The authorities are practically uniform that under constitutions like ours of 1868 and 1885, the clause "The legislative authority of this State shall be vested in" a designated body—the legislature—vests in the legislative department full and complete legislative power, subject only to the limitations or restrictions contained in the constitution or in the constitution of the United States. This principle is distinctly asserted in many of the cases cited by the defendant in error, and is elementary. Cooley Const. Lim., p. 104; Cotten v. County Commissioners of Leon County, 6 Fla. 610; State *ex rel.* Attorney-General v. Covington, 29 Ohio St. 102; State *ex rel.* George v. Aiken, 42 S. C. 222, 20 S. E. Rep. 221. The power to provide remedies, and to prescribe penalties or forfeitures, for violation of laws which the legislature is competent to enact, or to enforce or punish the failure to perform duties created by such laws, is certainly a legislative power, and is therefore necessarily embraced in the general grant of legislative power quoted. Under the same clause in the constitution of 1868 there can be no doubt that the legislature might have authorized the writ of mandamus to enforce the lawful orders of a Board of Railroad Commissioners created by a valid law, and the constitution of 1885 being a revision of that of 1868, and continuing in force the general grant of legislative power, should not be held to limit or abridge that power unless there is something in the latter evidencing an intention so to do. There is nothing in the language of section 30, Art. XVI, to indicate an intention that the laws referred to should be enforced only by the imposition of penalties

or forfeitures, or that the legislature should not provide other methods or remedies for enforcing duties arising under such laws. There is no inconsistency between the power here mentioned, *viz*: to impose penalties or forfeitures, as a means of enforcing laws, and the power to prescribe or authorize civil remedies to enforce duties created by such laws. Even if the section be construed as a grant of power, the language of the first clause would necessarily carry the power to provide remedies and to prescribe penalties as a means of enforcing the laws to pass which "full power" is by the section declared to be in the legislature; and to give the last clause the effect contended for by defendant in error, would not only detract materially from the "full power" mentioned in the same section as being vested in the legislature, but would be to impose a limitation upon the preceding clause, although the last clause does not purport to limit, but to declare something additional to that mentioned in the first. Where the constitution makes a general grant of all the legislative power, other provisions in that instrument are not, generally speaking, grants of power to the legislature, but are inserted either as limitations upon that power or for some other purpose. While constitutional prohibitions upon the legislature need not always be express, but may arise from implication, yet the implied prohibition must result from the insertion of some express provision, as mere silence of the constitution can not be construed as a prohibition. The rule is that nothing shall be regarded as prohibited which is not so either expressly or by fair and reasonable implication. Lowrey v. Gridley, 30 Conn. 450; Morrison v. Springer, 15 Iowa, 304; Bushnell v. Beloit, 10 Wis. 195; Town of Bennington v. Park, 50 Vt. 178; State *ex rel.* Attorney-General v. Covington, 29 Ohio St. 102; Prouty v. Stover, 11 Kan. 235; Field v. People,

2 Scam. (Ill.) 79. If we construe this section as a grant of power, and apply the rules contended for by defendant in error, it would follow that the legislature could not enact laws in regard to persons and corporations engaged as common carriers in transporting persons and property or performing other services of a public nature, except to correct abuses, prevent unjust discrimination or excessive charges, and they would be wholly relieved from the operation of many wholesome laws passed under the general police power of the State to which other persons would be subject. Penalties or forfeitures could not be enforced against them for violation of any law of the State other than those passed in pursuance of the power conferred by the section, and even as to laws passed in pursuance of the powers there granted, neither the public nor individuals could be given remedies to enforce the laws, or to recover damages for injuries caused by a breach of duty imposed by such laws, except to recover a penalty or to enforce a forfeiture. It would be doing violence to the intelligence of the convention who framed and to the people who adopted, the constitution to suppose that such result was intended. The rules of interpretation invoked by the defendant in error are correct and should be adhered to in all cases where applicable, but they are not to be applied indiscriminately to every case; for the grant of one power by the constitution is not necessarily exclusive of another, and the expression of one thing does not necessarily exclude another. Ex parte Henderson, 6 Fla. 279; Barber v. State, 13 Fla. 675; Ex parte Bell, 19 Fla. 608; 1 Story on the Constitution, §448; State *ex rel.* Florida Publishing Co. v. Hocker, 35 Fla. 19, 16 South. Rep. 614. "In order to ascertain how an affirmative or negative provision excludes or multiplies others, we must look to the nature of the provision, the subject-

matter—the objects and scope of the instrument. These and these only can properly determine the rule of construction." Ex parte Henderson, *supra.* In construing constitutions as well as statutes the object is to ascertain the true intention or meaning expressed in the instrument. Where the language is plain and umambig-uous, there is nothing to construe—the meaning conveyed by plain and unambiguous language must not be changed or distorted by the application of any technical rule of construction. There does not appear to be any ambiguity in the language used in this section. It does not purport to confer a power, or to point out the manner in which a power shall be exercised. The section was inserted in response to a popular demand for some provision upon the subject It does not grant the legislature a power. It expressly recognizes a power and declares that it does exist. The provision is a specific declaration that the power exists in the legislature to be exercised at any time, and because of its importance, and possibly to guard against the misinterpretation of other provisions to impair or deny the power, it was specifically mentioned and declared in the constitution. This, it seems to us, is clearly the effect of the first clause. The last clause does not purport to confer any power to provide for imposing penalties or forfeitures. It requires the legislature to provide for enforcing the laws by adequate penalties or forfeitures but it does not confer the power to do so, for without that clause the legislature would have had ample power to do precisely the same thing. The use of the words "penalties or forfeitures" conveys the idea of *punishment* for violation of the laws to be made, and for the reasons stated in Pensacola & Atlantic Railroad Co. v. State, 25 Fla. 310, text 313, 5 South. Rep. 833, it was deemed best to leave no discretion with the legislature as to whether it should

provide for penalties or forfeitures, hence the mandatory command "and shall provide for enforcing such laws by adequate penalties or forfeitures." In short, this clause imposes a duty, but grants no power. The imposition of a duty is not ordinarily to be construed as a limitation upon power. Curryer v. Merrill, 25 Minn. 1, S. C. 33 Am. Rep. 450. The command to provide for enforcing the laws by penalties and forfeitures leaves no discretion with the legislature upon that subject, but the clause being silent as to other remedies for enforcing duties growing out of those laws, it rests in the legislative discretion to provide such as it may see fit or for the courts to apply such of the ordinary remedies as may be applicable. It is argued that when the constitution directs how a thing shall be done, that is in effect a prohibition to its being done in any other way, and we are referred to the case of State *ex rel.* Murphy v. Barnes, 24 Fla. 29, 3 South. Rep. 433, announcing that rule of construction. The rule is recognized as correct, and was unquestionably properly applied in that case. It is evident from a reading of the clause of the constitution there under consideration that the manner there prescribed was intended to be exclusive. But there is nothing in the section we are now considering which conveys an intent to exclude other remedies, and if it was intended to deny the power of the legislature to provide them, or of the courts to apply those granted them by the constitution, some language would have been used from which that intent could be legitimately inferred. The prohibition to exercise a proper legislative power must be either expressed or fairly and reasonably implied, and there is nothing in this section which can be reasonably construed as an express or implied prohibition. The legislature of 1887 and several subsequent ones have passed legislation upon the subjects men-

tioned in this section of the constitution. All or nearly all of those laws, in addition to imposing penalties have given to individuals rights of action for damages sustained in consequence of the violation of those laws. So that the legislative construction accords with that which we have placed upon this section. Moreover, this court in 1888-9 entertained jurisdiction of a proceeding by mandamus upon relation of the Attorney-General against the Florida Southern Railway Co. to compel it to transport oranges at the rates established by the commissioners appointed under the railroad commission law of 1887. The defendant moved to quash the alternative writ, and also interposed a demurrer. The motion to quash was denied and the demurrer overruled. The defendant thereupon filed its return, to the effect that in obedience to the command of the alternative writ it had abandoned its own rates upon oranges and adopted those prescribed by the commissioners. As nothing but a memorandum opinion was ever prepared, it was not published in the reports, but we have ascertained the foregoing facts from the records of the court. See, also, State *ex rel.* Attorney-General v. Pensacola & Atlantic Railroad Company, 27 Fla. 403, 9 South. Rep. 89, where this court entertained jurisdiction of mandamus to enforce compliance with certain regulations made by the same board of Railroad Commissioners. It is hardly probable that in these cases the court and counsel would have overlooked so important a matter as a constitutional prohibition against the use of mandamus in such cases.

IV. Twelfth ground of the motion to quash: Under the powers conferred by section 6 of the railroad commission law the commissioners have prescribed a rule or regulation, and therein fixed rates for the uses and privileges of the passenger terminal of defendant in

error by the Atlantic, Valdosta & Western Railway Company. Under section 8 this rule or regulation is to "be deemed and held to be *prima facie* reasonable and just." This being true, it was not necessary to allege that the amount so fixed was not less than the amounts paid by other patrons of the defendant in error for a like enjoyment of such facilities and service. As the statute requires that the rule or regulation here sought to be enforced be deemed and held to be *prima facie* reasonable and just, it is unnecessary to allege in the alternative writ any fact tending to show that it is reasonable and just. Storrs v. Pensacola & Atlantic R. R. Co., 29 Fla. 617, 11 South. Rep. 226.

V. Fourteenth ground of the motion to quash: This ground fails to point out any other remedy by which the Atlantic, Valdosta &. Western Railway Company can be admitted into the passenger terminal of the defendant in error in pursuance of the regulation of the Railroad Commission, and the briefs upon this hearing do not attempt to do so. The argument under this ground is that there is no remedy whatever whereby the defendant in error can be compelled to admit the Atlantic, Valdosta & Western Railway Company to the uses of its terminal station, as to do so would be to take the private property of the terminal company for the private use of the railroad company. We shall consider this branch of the case under other grounds of the motion to quash. If it is meant to assert that an action for damages, or proceedings to enforce the penalty denounced by the statute for failure to comply with the regulation of the commission, will preclude the use of mandamus, then we have no hesitancy in overruling this contention, because these remedies are inadequate, and neither of them are adapted to secure a performance of the duty to the public here sought to be enforced. High's Ex.

Legal Rem. §§17, 18, 35; Ray v. Wilson, 29 Fla. 342, 10 South. Rep. 613.

VI. Third and sixth grounds of the motion to quash: There is nothing in this record to show that the commissioners in determining the propriety of the regulation made by them were actuated by considerations of public interest and convenience other than as such public interest and convenience were involved in the transportation of persons and freight from points in Florida to points in Florida. We have no information from this record as to how many miles of road the Atlantic, Valdosta & Western Railway Company has in this State, nor what proportion of its business is local to this State. As the regulation must be presumed to be reasonable and just, we must assume that the local business is sufficient to justify the regulation in the absence of some showing that the commission did in fact take into consideration interstate business. Jacobson v. Wisconsin, Minnesota & Pacific R. R. Co., 71 Minn. 519, 74 N. W. Rep. 893, S. C. 40 L. R. A. 389. It is true that the regulation requires the admission of all the passenger engines and trains of the Atlantic, Valdosta & Western Railway Company, and as the road extends into the State of Georgia, it is possible that some of these trains may at times, carry no passengers bound from points within to points within the State of Florida. The defendant in error is a domestic corporation, engaged in furnishing terminal facilities for railroad common carriers entering the city of Jacksonville. It is not engaged in interstate business. Its business is purely local. The Atlantic, Valdosta & Western Railway Company, though a part of its business may be interstate, desires to enter the terminal station, and makes no contention that the order permitting it to do so interferes with its interstate business. The commissioners find that it is

essential to the best interest and convenience of the public that the terminal facilities of the common passenger station be furnished the railway company. The station is located in a city and it may be that the public safety as well as the public convenience requires that the terminal company accommodate the railway company. The regulation in question is not in itself unreasonable; it has appropriate relation to the public safety and convenience, does not go beyond the necessities of the case, and is not directed against interstate commerce. While it may be true that some of the trains of the railway company may carry no passengers bound from points within to points within the State, yet it was not improper for the commissioners to take into consideration all the circumstances affecting passenger travel within the limits of the State, and as far as practicable make such regulations as were just to all who might pass over the Atlantic, Valdosta & Western Railway. They could consider the convenience of the public who might travel from one point to another in the State on domestic trains, and they were not bound to ignore the safety and convenience of the public desiring to travel from places within to places without, or from places without to places within the State, at least in so far as those matters were involved in furnishing proper terminal facilities located wholly within the State by a domestic corporation. This regulation is not directed against, but is in aid of, interstate commerce; it affects it only incidentally. It is not subject to the objection that it is an unconstitutional interference with interstate commerce. Lake Shore & Michigan Southern Railway Co. v. Ohio, 173 U. S. 285, 19 Sup. Ct. Rep. 465, and authorities therein cited; Munn v. Illinois, 94 U. S. 113; Budd v. New York, 143 U. S. 517, 12 Sup. Ct. Rep. 468; Brass v. North Dakota ex rel. Stoeser, 153 U. S. 391, 14 Sup.

Ct. Rep. 857; Jacobson v. Wisconsin, Minnesota & Pacific R. R. Co., *supra*.

VII. Fifth ground of the motion to quash: In view of the express language used in section 6, and the definition of railroad company and other provisions in section 5 of the railroad commission law, there is no room to contend that the Atlantic, Valdosta & Western Railway Company is not subject to the regulation, supervision and control of the Railroad Commissioners in so far as its line of road is located in this State, and in so far as its business is confined to State traffic. It has invoked the jurisdiction of the commissioners over the defendant in error which is ample to enable them to make the regulation sought to be enforced, and has voluntarily complied with the requirements of such regulation. There is no ground, therefore, for the defendant in error to contend that the commission had no authority over the railway company.

VIII. Seventh ground of the motion to quash: What we have said in the sixth paragraph of this opinion is applicable to the seventh ground of the motion to quash. Although this ground does not deny that the commissioners have power to consider the best interest and convenience of the public in regard to transportation of persons and property wholly within the State, the argument upon this ground of the motion is that section 30, Art. XVI of the constitution, prohibits the legislature from authorizing the commissioners to consider the best interest and convenience of the public, in discharging their duties. The public safety, interest and convenience are clearly embraced within the legislative power of the State. Louisville & Nashville R. R. Co. v. Kentucky, 161 U. S. 677, 16 Sup. Ct. Rep. 714; Gladson v. Minnesota, 166 U. S. 427, 17 Sup. Ct. Rep. 627; Lake Shore & Michigan Southern Railway Co. v. Ohio, 173

U. S. 285, 19 Sup. Ct. Rep. 465; Lake Shore & Michigan Southern Ry. Co. v. Smith, 173 U. S. 684, 19 Sup. Ct. Rep. 565; Charlotte, Columbia & Augusta R. R. Co. v. Gibbes, 142 U. S. 386, 12 Sup. Ct. Rep. 255. It is absolutely necessary to take into consideration the public interest, comfort, safety and convenience in determining what is an abuse or an unjust discrimination, or an excessive charge—not that these matters are to be determined solely with reference to the public interest, comfort, safety and convenience, but some or all of them necessarily enter into the inquiry. Indeed, it is the public nature of the services being performed, or the public nature of the business engaged in by common carriers and others, which justifies the State in controlling and regulating them for the public welfare, and the section of the constitution invoked, instead of prohibiting consideration of the public interest and convenience, expressly recognizes them as proper considerations in determining what is an abuse, an unjust discrimination or an excessive charge.

IX. Fourth ground of the motion to quash: Without stopping to inquire whether in this proceeding more errors of the commissioners can be reviewed, it is sufficient to say that neither this ground of the motion nor the briefs point out wherein the commissioners erred in making the regulation sought to be enforced, upon the petition of the Atlantic, Valdosta & Western Railway Company. As will be shown hereinafter, the commissioners had jurisdiction to make the regulation, they acted only after notice to the parties, an answer to the petition, after hearing evidence, argument of counsel and after having viewed the premises in person and investigated the business of the defendant in error. The regulation made by them is by the statute declared to be

*prima facie* just and reasonable, and there is nothing whatever to show any error on their part.

X. Eighth, tenth, thirteenth and seventeenth grounds of the motion to quash: We think the proper construction of that part of section 6 of the railroad commission act referring specially to passenger terminals requires us to hold that the power thereby conferred upon the commissioners to require the admission therein of railroad companies desiring or required by the commissioners to enter, has no reference to a terminal station owned and used exclusively for its own traffic by any common carrier or railroad company, but applies to those passenger terminals owned or operated by a terminal company or individual or by a railroad company in connection with its main line, where such terminal company, individual or railroad company undertakes to furnish terminal facilities to or permits the use of such terminal and its privileges by one or more railroad common carriers. This intention, we think, is clearly manifest from the use of the terms passenger terminal companies, "whether owned or operated by any railroad company in connection with its main line or by a separate company organized for that purpose;" and when the act speaks of compelling the person or company operating said terminal "to furnish to the railroad entering the same fair and equal participation in all the rights, privileges, connections, interchanges of traffic and other benefits of such terminal." We do not mean to say that the commissioners are given no powers over terminal stations owned and used by a railroad company exclusively for its own traffic, for they have certain powers relating thereto derived from other provisions of the statute, and because such terminals are part and parcel of the main line over which certain powers are given, but as to such terminals the commissioners have no au-

thority to require the admission of another company
and to fix the rate of compensation therefor. According
to the pleadings in this case we have a passenger ter-
minal designated in the regulation of the commissioners
a "common passenger station," owned and operated by
a terminal company, not to accommodate its own traffic,
or as a part of its main line of railroad to facilitate its
own work as a carrier, but devoted to the purpose of
furnishing terminal facilities to and for railroad com-
panies entering Jacksonville, with sufficient capacity to
accommodate another road desiring to be furnished with
similar facilities and which it is essential to the best in-
terest and convenience of the public it should furnish.
There can be no doubt that the defendant in error is
subject to the authority of the Railroad Commissioners,
and that the latter are given power under the statute to
make the regulation sought to be enforced, unless the
powers attempted to be conferred are prohibited by the
constitution of this State or that of the United States.
We shall in the next succeeding paragraph consider the
question as to whether the power here exerted amounts
to a taking or appropriation of the property of the de-
fendant in error under the power of eminent domain,
and shall here consider all other constitutional questions
presented. It is contended that the exercise of the pow-
er conferred by this statute deprives the defendant in
error of its liberty and property without due process of
law; that it is a private corporation engaged in a private
business, devoting its property to private uses, receiving
no franchise or privilege from the State and performing
no governmental functions; that under these circum-
stances it can not be compelled to devote its property to
the use of another private corporation, but that it has a
right to permit or decline to permit the use of its prop-
erty by whomsoever it pleases. But these contentions

41st Fla.]  JUNE TERM, 1899.  411

State v. Jacksonville Term. Co.—Opinion of Court.

proceed from a wholly mistaken view of the nature and character of the business and property employed therein of defendant in error, as we shall proceed to show. The defendant in error according to the allegations of the pleadings is a corporation whose right to exist and to carry on the business in which it is engaged are derived from the State, and when engaged in such business its passenger terminal is a part and parcel of the public highways of the State represented by the railroads entering therein and in operating such terminal defendant in error is to a certain extent performing a function of government. It is engaged in a business affected with a public interest, for it performs for the public duties which devolve upon and which are required to be performed by the railroad common carriers entering its terminal. Indianapolis Union Railway Co. v. Cooper, 6 Ind. App. 202, 33 N. E. Rep. 219. While its property is private, it has devoted it to a public use by undertaking to furnish terminal facilities to railroad common carriers, and the public are not simply invited to use the property, but they have a legal right to resort thereto for terminal facilities incident to travel upon the railroads served by it. The State does not undertake to compel the defendant in error to devote its property to a public use, but it has voluntarily dedicated it to that purpose by undertaking to do for the public and the railroad common carriers entering its terminal that which such carriers are required by law to do for the public, *viz*: to furnish suitable terminal facilities for the proper accommodation and transportation of the public as passengers upon the railroads. Its property while so devoted by it is necessarily and essentially an instrumentality employed in the common carriers' business and is affected by a public interest as much so as the carriers' property. By undertaking to permit the use of this

property by and to furnish facilities for one or more railroad common carriers, it dedicates it to a use that is essentially public, and to the extent that the public has an interest in that use, it must submit to be controlled by the public for the common good. The legislature may, therefore, for the common good require it to admit all railroad common carriers to the extent of its capacity which the public interest may demand, and to limit its charges for the uses and privileges of its terminal to reasonable compensation; for where the public interest and convenience require that the Atlantic, Valdosta & Western Railway should be admitted to the uses and privileges of the passenger terminal of defendant in error, it is an abuse, and an unjust discrimination against the public and the passengers of that road, as well as against the road itself, not to accord that use and those facilities; and an excessive charge against that road for terminal facilities is in effect an excessive charge which the public will have to pay in the increased rate of fare caused by such excessive charge. We have no doubt that property devoted to the uses to which the pleadings show this terminal is devoted, is affected with a public interest and that the State has power to regulate such use by requiring the owner to serve equally and fairly all railroad common carriers which the public welfare may require, and to confine its charges therefor to reasonable rates or compensation, and that the exercise of this power does not deprive the defendant in error of its liberty or property without due process of law under the constitution of this State or of the United States. Ryan v. Louisville & Nashville Terminal Co. (Tenn.) 50 S. W. Rep. 744; Brass v. North Dakota *ex rel.* Stoeser, 153. U. S. 391, 14 Sup. Ct. Rep. 857; Budd v. N. Y., 143 U. S. 517, 12 Sup. Ct. Rep. 468; Munn v. Illinois, 94 U. S. 113; Jacobson v. Wisconsin, Minnesota & Pacific

R. R. Co., 71 Minn. 519, 74 N. W. Rep. 893, S. C. 40 L. R. A. 389; Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. Rep. 418; Lake Shore & Michigan Southern Ry. Co. v. Smith, 173 U. S. 684, 19 Supt. Ct. Rep. 565; Pensacola & Atlantic R. R. Co. v. State, 25 Fla. 310, 5 South. Rep. 833. It is contended that this doctrine first announced by the Supreme Court of the United States in Munn v. Illinois has been subjected to severe criticism by text-writers, that it has always been maintained by a divided court, and that the dissenting opinions in cases where it has been adhered to show clearly that the doctrine is unsound. Counsel seem to forget that the general principles maintained in these decisions, to the extent that they affirm "full power" in the legislature "to pass laws for the correction of abuses, and to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers in transporting persons and property, or performing other services of a public nature," are imbedded in section 30, Art. XVI of our constitution, and we are not at liberty to depart from them unless they are violative of the constitution of the United States. Under the rulings of the Supreme Court of the United States, the principles are still sustained and held not violative of that instrument, as applied to railroad common carriers and others engaged in business affected with a public interest, and we have no doubt that defendant in error is "performing services of a public nature" within the meaning of our constitution, and that its business and property is "affected with a public interest," so as to subject it to the regulation here imposed without violating the "due process" clause of the Federal constitution. It is further contended that defendant in error has not been given power to condemn private property for its use, therefore its property is not affected with a public interest. Unques-

tionably if it could lawfully condemn private property for its use its business would be affected with a public interest, but this is not the exclusive test, for a railroad company transporting persons and property for the public would be no less a common carrier and its business and property affected with a public interest, though its charter required it to acquire by private purchase all of its right of way and property used in its business, and it would be equally subject to State regulation and control as other common carriers.  It is also contended that the railroad commission law embraces more than one subject and matter properly connected therewith, in violation of section 16, Art. III of the constitution.  This contention was disposed of by our adverse decision on the motion to quash the writ of error in this case.  See the opinion then filed, 41 Fla. ——, 27 South. Rep. 225. Also, as sustaining the conclusions there reached, Holten v. State, 28 Fla. 303, 9 South. Rep. 716; State *ex rel.* Turner v. Hocker, 36 Fla. 358, 18 South. Rep. 767.  It is further contended that the provisions of the sixth section of the railroad commission law relating to the admission into terminals and the fixing of rates for the uses and privileges thereof, apply only to such terminals as are owned by corporations, and therefore, discriminate between corporations and individuals who may be engaged in the same character of business.  But we think this contention is not correct.  The provisions apply to the "owner, lessee, or operator" of passenger terminals and the "person or company" operating the same. These terms include corporations, associations and individuals, and the legislation, therefore, does not discriminate between owners or operators of terminals.

XI. Ninth and eleventh grounds of the motion to quash:  The regulation made by the commissioners, under the power conferred upon them, in this case is in no

sense an "appropriation" of any private property or right of way within the meaning of section 29, Art. XVI of the constitution, so as to require the compensation therefor to be ascertained by a jury of twelve men. The defendant in error, as we have seen, had devoted its property to a use essentially public, is performing services of a public nature, and is subject to be controlled by the public for the public welfare. That use to which it has voluntarily devoted its property is to furnish passenger terminal facilities to railroad common carriers. It is discriminating among the railroads that it will serve, and the commissioners under power granted them by the legislature have determined that such discrimination as against a particular railroad is unjust and contrary to the best interest and convenience of the public. It has, therefore, made a regulation that this railroad be admitted to the facilities which the defendant in error is furnishing other railroad common carriers upon payment of reasonable compensation. It is no more an appropriation of the property of the terminal company than is the law which requires common carriers to transport all persons at a reasonable rate of compensation, or the law which requires an innkeeper to furnish accommodations to all who apply, and at reasonable rates if fixed by the legislature. While it would seem that the one was as much an appropriation of property as another, it surely will not be contended that a passenger or a traveler must condemn his way into a railroad passenger car or hotel in order to secure the transportation of the lodging to which he is by the law entitled. There is a very clear distinction between a taking or an appropriation of property for a public use, and regulating the use of property devoted to a use in which the public has an interest. The latter is an exercise of the police power,

as it is called; the former of the power of eminent do-
main. The State in the former case compels the dedica-
tion of the property or some interest therein to a public
use, or, if already dedicated to one public use, then to
another. In the latter, the owner has voluntarily or in
pursuance of the provisions of its charter, dedicated the
property to a use in which the public has an interest, and
the use of that property so dedicated is merely regulated
and controlled for the public welfare. In this case the
regulation complained of does not compel the defend-
ant in error to dedicate its property to the public use,
or to a different public use. It has already voluntarily
and presumably in pursuance of its charter powers de-
voted its property to a public use by undertaking to
furnish for railroad common carriers and the public
served by them terminal facilities to aid and enable these
public agencies to perform their obligations to the pub-
lic and to assist them in such performance. The State
regulates this use of the property by requiring that the
charges for such uses and privileges shall be reasonable,
and by requiring the terminal company in performing
the services and conducting the business which it has
so voluntarily assumed, to perform such services and
conduct such business impartially and without discrimi-
nation wherever the public interests require them to be
so performed and conducted. The regulation com-
plained of does not appropriate property; it merely pre-
vents abuses, prohibits unjust discrimination and ex-
cessive charges, and is, therefore, valid. Of course if the
regulation sought to be enforced is valid, its enforce-
ment by mandamus can not be construed as a taking
or appropriation of property under the power of emi-
nent domain, or as a deprivation of property without due
process of law.

XII. Sixteenth ground of the motion to quash: We

shall here consider the only other point suggested or contention raised in the arguments and briefs of counsel, not considered in previous paragraphs of this opinion. It is contended that the railroad commission law prescribes no method whereby to arrive at what is a proper compensation for the use of the terminal facilities of the defendant in error. Under sections 8, 10, 17, 18, and the last clause of 21, ample provision is made to enable the commissioners to proceed to ascertain the facts necessary to be known in order to make the regulation complained of. The defendant in error had notice of the things the commissioners were asked to compel it to do, it filed its answer, testimony was taken, and arguments were heard. The commissioners had power to pass upon the subject-matter, they accorded the defendant a hearing as required by the statute, they heard evidence as they were authorized to do by the statute and made the regulation upon that hearing. Upon this record there is no room for contention that the property or business of the defendant in error was interfered with arbitrarily or without a full hearing and investigation of all the facts necessary to enable the commissioners to make the regulation sought to be enforced.

XIII. This disposes of all the grounds of the motion to quash, and of every contention made by defendant in error under these grounds, and we are of opinion that the alternative writ states a *prima facie* case and ought not to have been quashed. It may be that the clause in the regulation which undertakes to relieve the defendant in error from liability for negligence is outside of the powers granted to the commissioners, but if so it could not affect the result, and as the parties have not argued the question we do not decide it. It is certain that in other respects the regulation is *prima facie* valid and capable of being enforced by mandamus. State v.

27

Fremont, E. & M. V. R. R. Co., 22 Neb. 313, 35 N. W. Rep. 118.

The judgment of the Circuit Court is reversed with directions to overrule the motion to quash, and for further proceedings according to law.