# DISTRICT OF COLUMBIA *v.* WASHINGTON GAS LIGHT COMPANY.

### STATUTES; PENALTIES; ACTION FOR.

Under the act of Congress of June 23, 1874 (18 Stat. at L. 277, chap. 480), providing that when illuminating gas supplied for public use by any company in the District of Columbia shall, at any. one time, be of less illuminating power or of less purity than according to the prescribed standard, it shall be so reported by the public inspector to the company, which shall be subject to a penalty of $100 for each and every day during which such violation shall continue, unless such deviation could not have been prevented by ordinary care, but was occasioned by some unavoidable cause,—the penalty begins to run immediately after notice by the inspector, and if the defect is permitted to extend for the full period of a day, liability for one penalty will attach, and the company will be liable for a similar penalty for each succeeding day during which it permits the default to continue. A continuous test is not required. When the defect is discovered and notice given, the inspector must make a competent test during each succeeding twenty-four hours; and if he still finds the defect, it will be presumed that it has not been corrected, but has continued from the time it was first discovered, and the penalty will attach for each period of twenty-four hours during which the default shall have continued. Good administration would suggest several tests during each day; but in an action by the municipality against a company to recover such penalties, the sufficiency of any test actually made to establish a continuing default is a question for the jury. If, upon any succeeding day, it appears that there is no defect, it will be presumed that the company has responded to the last notice given, and remedied the defect, and no penalty will accrue for the period succeeding the last inspection on which the defect was found to exist. (Mr. Justice ROBB dissenting in part.)

No. 2177. Submitted January 4, 1911. Decided March 6, 1911.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia on a verdict directed by the court in an action to recover statutory penalties.                                                    *Reversed.*

The Court in the opinion stated the facts as follows:

This action was brought by appellant, District of Columbia, hereafter referred to as plaintiff, to recover from the defendant, The Washington Gas Light Company, a corporation, the sum of $2,900 as accrued penalties for failure to furnish gas of the illuminating power and purity required by law.

The declaration alleges that the gas furnished by the defendant company was of less illuminating power than that required by law on nineteen days during the period from July 5th to October 9th, 1907, inclusive, and that there were defaults in purity on ten days between August 14th and October 9th, 1907, inclusive. Plaintiff claimed for these defaults the sum of $2,900 as accrued penalties. Defendant pleaded *nil debit*, and a special plea, alleging that the defaults could not have been prevented by the exercise of ordinary care. Issue was joined, and the cause was tried to a jury. After the submission of all of the evidence, the court, on motion, directed a verdict for defendant. From the judgment thereon this appeal was taken.

*Mr. Edward H. Thomas,* Corporation Counsel, and *Mr. Francis H. Stephens,* Assistant, for the appellant.

*Mr. Benjamin S. Minor* and *Mr. Hugh B. Rowland* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is essential to examine the various provisions of the statute composing what may be termed the gas-inspection system of the District of Columbia. By the act of Congress of June 23, 1874 (18 Stat. at L. 277, chap. 480, 1 U. S. Rev. Stat. Supp. 52), there was created the office of gas inspector, who was to be appointed by the President, by and with the advice and consent of the Senate. An assistant inspector was also provided for. Provision was also made "that the com-

pany, person, or persons furnishing the gas may, if they see fit, on each occasion of the testing of the gas by the inspector or assistant inspector, be represented by some officer, but such officer shall not interfere in the testing." The inspector was required to keep a record of each inspection, giving the illuminating power and purity, which record should be open to the public. It was also provided that "a copy of the daily inspection shall be furnished the following day to the company, person, or persons furnishing the gas, Saturday's inspection to be furnished on Monday." The inspector was also required, upon request, to furnish, for publication, full monthly reports to any daily paper printed in the city of Washington.

By the act of March 3, 1893 (27 Stat. at L. 543, chap. 199, 2 U. S. Rev. Stat. Supp. 110), which was amendatory of the act of 1874, it was provided that daily inspections "shall hereafter be made at any time after twelve o'clock noon and before twelve o'clock midnight, in the discretion of the inspector of gas and meters." By the same act it was provided that two laboratories should be established and maintained by the Washington Gas Light Company and one by the Georgetown Gas Light Company, in which the inspections and tests should be made.

By the act of Congress of June 26, 1896 (29 Stat. at L. 251, chap. 335, 2 U. S. Rev. Stat. Supp. 501), it was provided, with reference to the purity of gas, as follows: "And such gas shall not contain more than twenty grains of sulphur in any form in one hundred cubic feet, nor more than five grains of ammonia in any form in one hundred cubic feet, and shall be free of the impurity known as 'sulphureted hydrogen.'" By the same act was provided a method for testing the candle power "by the Bunsen photometer, using the Bray slit union burner numbered seven, consuming five cubic feet of gas p hour."

By the act of Congress of March 3, 1905 (33 Stat. at L. 896, chap. 1406), also amendatory of the general act of 1874, it was provided that "hereafter the illuminating power of gas furnished by any gas-lighting company, person, or persons in the District of Columbia shall be equal to twenty-two candles."

The original act of 1874 contains the clause under which this action was brought. It is as follows: "When the illuminating gas supplied by any company, person, or persons in the District of Columbia shall at any one time be of less illuminating power or of less purity than according to the standard just heretofore given, it shall be so reported by the inspector of gas and meters to the company, person, or persons supplying the same, who shall be subject to a penalty of one hundred dollars, to be recovered before the proper tribunal, and paid into the treasury of the District of Columbia, aforesaid, for each and every day during which such violation shall continue: Provided, however, That if it shall appear that such deviation from the above-named standards could not have been prevented by ordinary care and prudence, but was occasioned by some unavoidable cause, then the said penalty shall not be enforced."

It is sought by the plaintiff to apply what seems to us an unwarranted and harsh construction to the various provisions of the inspection law. It is insisted that each default constitutes a separate offense independent of the term of its duration, but that not more than one penalty can be imposed for any number of defaults occurring during one day. On the other hand, defendant contends that before the penalty attaches, the default must be shown to have continued uninterruptedly for the full period of one day after notice given and reasonable time accorded the company to remedy it.

We are not impressed with either contention. The statute was not intended to create a source of revenue from the collection of penalties, but to insure the people of the District of Columbia good service from the companies furnishing gas. To this end was the provision in the penalty clause inserted that, when the inspector discovered a defect, notice should be given the company. Why give this notice? In order that the defect could speedily be remedied. Why grant the privilege of correcting the defect? Because of the great difficulty, as disclosed by the evidence in this case, of maintaining uniform lighting power and purity in the manufacture of gas. Defects

will arise from sources which the most skilled in the art cannot detect. We must attribute to Congress knowledge of this fact; hence, it could not have been intended to hold defendant liable criminally for failure to prevent the happening of an event which human skill could not foresee. While defects in illuminating power may be speedily corrected after discovery, it appears from the testimony of the inspector that it takes probably ten hours to restore purity in the gas after the impurity is first detected. We must also impute knowledge of this fact to Congress. This is a potent reason for the nonenforcement·of the strict rule insisted upon by counsel for plaintiff.

At common law a single continuous offense could not be divided into several separate offenses; but in this country such statutes are common. A continuous offense may be divided into several separate offenses by attaching the penalty for each certain period of time during which the offense continues. It usually occurs in cases where the penalty is imposed upon the accused for failure to abate the thing condemned by law for a fixed period of time, and for each succeeding like period.·

The penalty· clause in the act before us conveys the intent of Congress with reasonable clearness. It requires the inspector, when he discovers "at any one time" a defect, either in the illuminating power or purity of the gas, to report it to the company supplying the same. It then provides that the company shall be subject to a penalty of $100 for every day during which the default shall continue. In other words, we think that, after notice, the penalty immediately begins to run; and, if the defect be permitted to extend for the full period of a day, liability for one penalty will attach, and the company will be liable for a similar penalty for each succeeding day during which it permits the default to continue.

This brings us to the question of how the continuous default of the company must be ascertained. Manifestly the inspector and his assistant are not required to stay in the three laboratories, in only two of which they can be present at one time, and continue the test for the full period of twenty-four hours, or so long as the default continues. In fact, they are only

permitted by law to enter the laboratories during twelve hours of the day. It follows, therefore, that a continuous test is not possible, nor do we think it is required. All that is required is that when a defect is discovered, and notice given, the inspector shall make a competent test during each succeeding twenty-four hours, and if he still finds the defect, it will be presumed that it has not been corrected, but has continued from the time it was first discovered, and the penalty will attach for each period of twenty-four hours during which the default shall have continued. Good administration would suggest several tests during each day; but the sufficiency of the test actually made to establish a continuing default is a question for the jury. If, however, upon any succeeding test, it appears that there is no defect, it must be presumed that the company has responded to the last notice given, and remedied the defect, and no penalty will accrue for the period succeeding the last inspection on which the defect was found to exist.

An examination of the schedules of dates when defects are alleged to have existed discloses that in several instances the defect existed on one or more succeeding days. Where this condition is found, the company may be liable for the amount of the penalty for each twenty-four hours that it was shown by successive inspections to have continued. As to these instances, the case should have been submitted to the jury with proper instructions. For the error committed the judgment will be reversed with costs, and the cause remanded, with directions to grant a new trial.                    *Reversed.*

Mr. Justice ROBB, dissenting in part:

I regret that I am unable to concur in that part of the opinion of the court to the effect that no violation of the law fixing the standard of illuminating power and purity of illuminating gas supplied by any company in this District can take place until after notice to such company of its default, when, quoting from the opinion, "the penalty immediately begins to run, and, if the defect be permitted to extend for the full period of a

day, liability for one penalty will attach, and the company will be liable for a similar penalty for each succeeding day during which it permits the default to continue." In other words, before the company can be subject to any penalty for failing to comply with the law, its default must continue "for the full period of a day" *after* notice. If the default terminates within that period, no liability whatever attaches. The company may again default the following day, and if, after another notice, it complies with the law within a day from such notice, it can escape the prescribed penalty. It thus appears that under the court's ruling there may be a wilful default every other day without any penalty attaching. It is apparent, I think, that such a ruling goes far towards the emasculation of the statute, and the defeat of its apparent purpose to insure to the people of this District illuminating gas of a prescribed standard of purity and power. It is evident that such a result ought not to obtain unless the language of the statute clearly demands it. I do not think it does.

The first part of sec. 3 of said act of June 6th, 1896 (29 Stat. at L. 251, chap. 335), prescribes the standard of purity and illuminating power of gas to be furnished by public-service corporations. The section then continues that when *"at any one time"* gas so supplied shall be of less illuminating power than the prescribed standard, that fact shall be reported by the inspector to the company, "who shall be subject to a penalty of one hundred dollars, to be recovered before the proper tribunal, and paid into the treasury of the District of Columbia, aforesaid, for each and every day during which *such violation* shall continue" (italics mine). This is not all the section, however. The language just quoted is immediately followed by this provision: "If it shall appear that such deviation from the above-named standards could not have been prevented by ordinary care and prudence, but was occasioned by some unavoidable causes, then the said penalty shall not be enforced."

Under the provisions of the act of June 23d, 1874 (18 Stat. at L. 277, chap. 480), still in force, the gas company may be represented upon each occasion of the testing of gas by the

inspector or his assistant, and under sec. 5 of said act a record is required to be kept of such inspections, and a copy furnished the company the following day.

At common law a continuous offense could not be divided into parts. *Ward* v. *Washington,* 4 Cranch, C. C. 232, Fed. Cas. No. 17,163; *Missouri ex rel. Barton County* v. *Kansas City, Ft. S. & G. R. Co.* 32 Fed. 722; *Crepps* v. *Durden,* Cowp. pt. 2, p. 640. It is apparent, therefore, it seems to me, that the purpose of Congress in adopting the peculiar phraseology of the penalty section under consideration was to avoid the common-law rule and make a gas company liable to a penalty for "each and every day" it wilfully or negligently fails to furnish gas of the required standard. Had the section stopped with the word "dollars," there could be no question as to its proper interpretation. The words, therefore, which the court finds controlling, are "for each and every day during which such violation shall continue." To my mind "shall continue," as here used, implies the *prolongation,* and not the *beginning,* of the offense. If the statute is read, "shall be subject to a fine for each and every day over which *such violation* shall extend," all possible ambiguity is removed. Having in mind the purpose of the statute, the provision giving the company the privilege of representation when tests are made, and the provision allowing the company to explain away any deviation from the prescribed standard, the conclusion is almost irresistible that such should be its reading. The court has held, and properly, that under the statute a continuous test is neither possible nor necessary. This ruling gives proper effect to the words "at any one time" which occur in this penalty paragraph.

When, therefore, a statutory test is made, a default found to exist, notice thereof given, prima facie an offense is established, and for "each and every day" that *"such violation"* continues, a new penalty attaches. This reading of the statute does not do violence to any of its provisions, is in harmony with the intent of Congress in its enactment, and does not result in injustice. The requirement that notice shall be given the company that default has occurred should be read in connection

with the proviso allowing the company to explain away such default. Manifestly, such a proviso would have been of little avail to the company unless its attention was seasonably directed to the conditions found to exist by the inspector.

I think it clear that Congress intended that a penalty should attach for each and every wilful or negligent failure on the part of any gas company to maintain the prescribed standard of purity and illuminating power of gas furnished the people of this District. It is for the jury to say, in a given case, whether such departure from standard was occasioned by some unavoidable cause, or was the result of carelessness or design. With great deference I submit that the interpretation given the statute in the opinion of the court defeats its apparent purpose.